The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

**John H. WILSON and Donna S. Sly, Defendants-Appellants.**

**No. 82CA0825.**

Colorado Court of Appeals, Div. I.

Aug. 18, 1983.

Rehearing Denied Sept. 8, 1983.

Certiorari Denied March 26, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sp. Asst. Atty. Gen., Valerie J. McNevin-Petersen, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Dixon & Snow, Rod W. Snow, Denver, for defendants-appellants.

VAN CISE, Judge.

Defendant Donna Sly appeals from a judgment of conviction of two counts of sexual assault on a child and one count of conspiracy to commit sexual assault on a child. Defendant John Wilson appeals from a judgment of conviction of one count of sexual assault on a child and one count of conspiracy to commit sexual assault on a child. *See* §§ 18-3-405 and 18-2-201, C.R.S.1973 (1978 Repl.Vol. 8). We affirm.

At the time of these incidents, September 1980, defendant Sly was 20 years old and was living in the home of defendant Wilson and his wife. Wilson, 46, was a voodoo priest and used his home as a meeting place for members of his religion.

The complaining witnesses in this case are two sets of teenage sisters ranging in ages from 12 to 15, who testified that on different occasions they were met by Sly who "invited" them into the Wilson home to see some cosmetics and to try on clothing. Inside the home they were introduced to the "boutique room," where the defendants displayed numerous items of an erotic or exotic nature. The witnesses testified that they were encouraged to try on sexually oriented clothing and to pose for pictures. Thereafter, on different occasions,

the defendants performed the acts which formed the basis of these charges.

Sly testified that no sexual assault occurred. Wilson did not testify.

### I.

The defendants first contend that the trial court erred in denying their challenge for cause to a prospective juror. We do not agree.

The prospective juror was a minister of a fundamentalist Christian church. During voir dire, in response to numerous questions concerning his personal religious beliefs and whether such beliefs would prevent him from rendering an impartial decision, he stated that he was not shocked or prejudiced by Wilson's occupation, he had no religious or moral scruples about the case which would influence his decision, he could separate issues of religion from issues of law, and he was prepared to render an impartial opinion.

The trial court denied defendants' challenge. The defense exercised all of its peremptory challenges, one of which was used to remove this prospective juror.

■ In deciding on a challenge for cause based on an assertion that the prospective juror is biased under § 16–10–103(1)(j), C.R.S.1973 (1978 Repl.Vol. 8), a trial court is vested with wide discretion, "since the factors of credibility and appearance which are determinative of bias are best observed at the trial court level." *Nailor v. People*, 200 Colo. 30, 612 P.2d 79 (1980). Here, the trial court determined from the voir dire that the prospective juror would render an impartial verdict according to the evidence at trial and the law as instructed by the court. *See People v. Gurule*, 628 P.2d 99 (Colo.1981); *Beeman v. People*, 193 Colo. 337, 565 P.2d 1340 (1977). There was no abuse of discretion in so ruling.

### II.

The defendants next contend that their cross-examination was unduly restricted in the instances discussed below, thereby de-nying them the right of confrontation and precluding development of their theory of defense. We disagree.

Although not allowed to inquire about the details of the rape itself, the defense was allowed to cross-examine one of the victims about an allegedly false report she had filed with the police a few days before her assault in this case concerning a claimed rape by another man. In this attempt to discredit the victim's testimony, the defense was permitted to call the police officer who investigated the complaint and to elicit from him that he did not believe the report and that it had been relegated to inactive status.

■ The credibility of a victim in a sexual assault case may be attacked by showing that she has a history of making false accusations. Section 18–3–407(2), C.R.S.1973 (1978 Repl.Vol. 8). *See People v. Sheperd*, 37 Colo.App. 336, 551 P.2d 210 (1976). However, when the court determines that such evidence is relevant, it possesses the authority to "prescribe the nature of the evidence or questions to be permitted." Section 18–3–407(2)(e), C.R.S. 1973 (1978 Repl.Vol. 8). In designing such limitations, the focus should be on the falsity of the allegation, and the court should not permit a full scale inquisition concerning previous charges of sexual misconduct. *Little v. State*, 413 N.E.2d 639 (Ind.App. 1980). We see no error in the limitations imposed. *See. People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978).

■ During the time of the assault in this case, the same victim was keeping a personal diary. On direct examination she stated that reading her diary helped her pinpoint the date of the assault. On cross-examination, the defense was permitted to cross-examine concerning other entries in the diary, and the diary itself was admitted into evidence, except for deletion of reference to prior sexual conduct with others. This deletion was proper under the rape shield law, especially § 18–3–407(1), C.R.S. 1973 (1978 Repl.Vol. 8).

On the ground of irrelevance, the defense was not allowed to cross-examine any of the four victims concerning the alleged homosexuality of their mothers. Also, the court refused to admit the testimony of a woman who claimed she had had a homosexual relationship with one of the mothers with the knowledge of the daughters. The court ruled that the defense theory that the victims were angered by their mothers' homosexual activity and "substituted" the anger by making false accusations against the defendants, was "tenuous at best without expert testimony."

█ Defendants made no showing that their theory has attained the degree of reliability which would warrant its admission at trial. *See* CRE 401–403; *People v. Anderson*, 637 P.2d 354 (Colo.1981). The determination here of whether the tendered testimony was relevant and not speculative were matters within the discretion of the trial court. *People v. Reynolds*, 194 Colo. 543, 575 P.2d 1286 (1978); *Beeman v. People, supra.* We find no abuse of that discretion.

One of the victims was a difficult witness who frequently gave unresponsive or evasive answers to defense counsel's questions. However, counsel was persistent and elicited answers to all but two questions. In both instances, the trial court attempted to assist the defense in obtaining a cogent response. When it became apparent that the witness could not, or would not respond, the trial court ordered the defense to move on. Defendants claim that this was error.

█ The scope and limits of cross-examination are matters within the sound discretion of the trial court. *People v. Raffaelli*, 647 P.2d 230 (Colo.1982). The sequence of events was itself damaging to the witness' credibility and thus helpful to the defense. There was no abuse of discretion here.

### III.

█ Defendants next contend that the trial court erred in refusing their theory of the case instructions. We disagree.

The instructions tendered by defendants were highly argumentative. Furthermore, their theory of the case, that no assaults occurred and that the victims' testimony was incredible, was encompassed in the instructions, including the instruction on credibility. Under these circumstances *People v. Martinez*, 652 P.2d 174 (Colo. App.1981), and *People v. Akins*, 36 Colo. App. 337, 541 P.2d 338 (1975), control.

### IV.

Among the prosecution exhibits admitted into evidence were bags of pornographic items which the police seized from the boutique room. The victims testified to seeing most, but not necessarily all of these items when they entered the defendants' home. Four other exhibits were bags containing similar items seized from the basement. No victim testified that she was taken to the basement or observed these items in the basement.

The defense objected to the admission of all of these items at trial and, on appeal, contends their admission constitutes reversible error, on the grounds that they were irrelevant and cumulative and because their probative value was substantially outweighed by their prejudicial impact. The court determined that all of the items were relevant to the prosecution's conspiracy theory, to its theory that defendants possessed these items for purposes of enticing victims into sexual activity, and to rebut a suggestion that the defendants' home was a Halloween "funhouse."

█ In reviewing a trial court's decision as to relevancy, "we must assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected." *People v. Lowe*, 660 P.2d 1261 (Colo.1983). We find no abuse here.

### V.

Defendants next contend that they were denied a fair trial because of various in-

stances of alleged prosecutorial misconduct. We find no reversible error.

## A. *Discovery*

Several months before trial, the prosecution provided the defense with a computer printout which indicated a "contact" between the police and one of the victims. Defense counsel claimed to have requested any reports corresponding to that printout, but asserted that the victim's rape report was not provided until voir dire of the prospective jurors. The prosecutor claimed that the defense did not request any reports until shortly before trial.

Also, during trial, the defense contacted a witness who advised that two of the victims had been placed in foster homes on several occasions. The prosecution was then ordered to produce any records of juvenile commitments and to contact its witnesses concerning these commitments. After the conclusion of the evidence but before jury instructions were given, the prosecutor succeeded in contacting the victims' social workers. The social workers indicated that there were three placements for one of the girls and two for the other, all resulting from conflicts with their mother.

■ Because the rape report was highly probative of that victim's credibility as a witness, the prosecution was obligated to provide the report even if it was not specifically requested. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). However, the report was provided before trial began and was used extensively to attack the victim's credibility. The defense did not ask for a continuance to make further use of the report, the prosecution did provide the "contact" printout, and there is no indication that the prosecution deliberately suppressed the report. Under these circumstances, there was no prejudicial error. *See People v. Beigel*, 646 P.2d 948 (Colo.App.1982); and *People v. Goetz*, 41 Colo.App. 60, 582 P.2d 698 (1978).

■ Regarding the "placements" of the girls, there was genuine dispute about whether such material was within the scope of defense requests for production, and even greater dispute about the relevancy of the material. The defense theorized that these placements revealed a "bad" home life and, therefore, related to credibility. This argument is another form of the "substitution of anger" theory which the court found "tenuous." We see no prosecutorial misconduct here. *See People v. Beigel, supra.* This is especially true since the court stated that defendants' case could be re-opened if relevant information was obtained from the social workers.

## B. *Rebuttal Argument*

■ During rebuttal argument, the prosecutor stated "one thing that [defense] counsel has not been able to tell you, that perhaps you are wondering about, is why would these girls make this up?" Defense counsel objected that this remark improperly shifted the burden of proof to the defendants, whereupon the trial court cautioned the jury that arguments of counsel are not evidence. Examined in context, the prosecutor's comment is an invited response to the defendants' closing argument which attacked the victims' testimony as fabrication.

■ The prosecutor further remarked that "what happened to the girls is true." She also stated, "If you believe the girls, however, we will ask you to join with our society in saying 'No, this cannot go on.'" Not having been objected to at the time or in the new trial motion, the plain error standard must be applied to these remarks.

■ These statements were followed closely by her comment, "You are the judges of credibility and you may decide whether or not they were telling the truth." And, while the prosecutor's remark concerning "joining with society" was questionable, she made it clear that no finding of guilt was possible unless the jury believed the victims. Under these circumstances, there was no plain error. *See People v. Gutierrez*, 622 P.2d 547 (Colo.

1981); *People v. Plotner*, 188 Colo. 297, 534 P.2d 791 (1975).

### C. *Disclosing Motion for Recusal*

 Defendants claim that prior to trial the prosecutors disclosed to the court that defense counsel were contemplating a motion for recusal and thereby prejudiced the court against defendants. There is nothing in the record of proceedings before commencement of trial that supports this claim. And even if the remark had been made, there is nothing in the entire record that shows that the court was biased or conducted itself other than as a fair and impartial arbiter.

### VI.

Finally, the record itself negates defendants' contention that the trial court prevented the defense from making an adequate record by conducting side bar conferences or refused defense offers of proof.

Judgments affirmed.

PIERCE and BABCOCK, JJ., concur.