593 A.2d 784

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JAMES G. BUDIS, DEFENDANT-RESPONDENT.

Argued March 26, 1991—Decided August 6, 1991.

*Gilbert G. Miller,* Assistant Prosecutor, argued the cause for appellant (*Nicholas L. Bissell, Jr.,* Somerset County Prosecutor, attorney).

*Dennis M. Mahoney* argued the cause for respondent (*Mahoney & Mahoney,* attorneys).

*Robert E. Bonpietro,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal involves a conflict between the Rape Shield Statute, *N.J.S.A.* 2C:14-7, and defendant's constitutional right to confront accusing witnesses. A jury convicted defendant, James G. Budis, of two counts of aggravated sexual assault, and the trial court sentenced him to fifteen years in prison. The charges stemmed from two incidents in 1988 between defendant and his cousin's nine-year-old daughter, T.D. At trial, defendant sought to cross-examine both T.D. and the investigating detective about the sexual abuse of T.D. by her stepfather in 1987. T.D. gave virtually identical descriptions of her stepfather's conduct and of defendant's acts. The purpose of the cross-examination was to show that T.D. had acquired knowledge of oral and vaginal sex from a source other than defendant. He argues that in the absence of such testimony, the jury would conclude that the infant must have obtained her knowledge from her encounters with him. The trial court admitted evidence of T.D.'s accusation against her stepfather and of the ensuing police investigation, but excluded the details of the stepfather's abuse. The Appellate Division reversed. 243 *N.J.Super.* 498, 580 *A.*2d 283 (1990). We granted the State's petition for certification, —— *N.J.* —— (1990), and now affirm.

## I

On May 22, 1988, T.D. was staying with her father, an apartment house superintendent, who was separated from her mother. While playing a Nintendo boxing game with her brothers and cousin, T.D. commented that one boxer looked like he was "sucking the other guy off." When confronted by her father, T.D. at first refused to describe the source of her knowledge of oral sex. After her father washed her mouth out with soap, however, she described separate incidents of sexual abuse committed by her stepfather in 1987 and by defendant in 1988. The next day her father reported the incidents to the Division of Youth and Family Services.

On May 24, 1988, Detective Norman Cetuk of the Somerset County Prosecutor's Office interviewed T.D. about the occurrences. The 1987 incidents occurred while her mother was confined at Carrier Clinic, and T.D., then eight years old, was living with her stepfather. T.D. related that her stepfather would take her to his bed. He would then remove her clothes and place his erect penis in her mouth and vagina, but would not ejaculate.

She described two similar incidents involving defendant. The first occurred sometime before July 27, 1987, at her father's apartment. According to T.D., defendant asked her to accompany him to the apartment while he changed into his bathing suit. In her statement to the police, she said that defendant had taken off her clothes, but at trial she testified that she had removed them. As in her description of her stepfather's abusive conduct, T.D. related in both her statement and at trial that defendant put his erect penis in her mouth and vagina, but did not ejaculate. The incident lasted "about five minutes."

According to T.D., the second incident occurred approximately one week later. Her description of that incident in her statement to the police differed from her trial testimony. In her statement, she said that after taking T.D. and her brothers to an amusement park, defendant slept overnight at her fa-

ther's apartment. During the night defendant entered T.D.'s bedroom and threatened to "beat up" her father if she did not remove her clothes. At trial she said that before going to the amusement park, defendant had asked her to sleep naked with him. She denied that defendant had threatened her or her father. Both in her statement and at trial, T.D. stated that defendant had committed the same acts of oral and vaginal sex as she had described in the other incidents involving defendant and her stepfather.

Detective Cetuk, accompanied by Detective Bob Besser of the Plainfield Police Department, interrogated defendant on May 25, 1988. Defendant acknowledged two encounters with T.D. His statement to the investigating officers differed from his trial testimony and from T.D.'s versions. According to defendant, the first occurrence took place when he slept overnight on the couch at the apartment. In the middle of the night, he awoke to find T.D. stroking and kissing his penis. In his statement he said that he "threw her off." He also said that the incident took "[m]aybe five minutes at the most," a phrase he justified at trial as a figure of speech to mean that he immediately rejected T.D. The second incident occurred when he went to the apartment to change into his bathing suit after returning from the amusement park. Without his knowledge, T.D. followed him, and while he was changing, started to stroke and kiss his penis. In his statement, he said that T.D.'s touching him "felt good," but at trial explained that he meant that "it didn't hurt." Defendant told the investigating police that T.D. had continued touching him for "a minute and a half," until her father entered the room. At trial he testified that he had pushed T.D. away from him. In both his statement and his testimony, defendant maintained that a few days after the second incident he told T.D. that if she did not stop her behavior, he would tell her father.

Defendant was indicted for two counts of aggravated sexual assault. T.D.'s stepfather pled guilty to separate counts of

sexual assault and aggravated sexual assault, and has since been sentenced.

Before trial, defense counsel asked the court to allow him to elicit from Detective Cetuk the details of the sexual abuse committed by T.D.'s stepfather. Relying on the Rape Shield Statute, the court prohibited that inquiry. The testimonial portion of defendant's trial, which consisted of the testimony of T.D., Detective Cetuk, and defendant, lasted less than a day. The trial court permitted limited cross-examination of both T.D. and Detective Cetuk about T.D.'s allegations of abuse against her stepfather and the resulting investigation. Defense counsel was not permitted to explore either the circumstances of the abuse or the nature of the acts. Apparently troubled by the conflicting evidence, the jury deliberated for approximately a day and a half before returning a guilty verdict. During that time, it sent four notes to the court requesting the re-reading of portions of the testimony of both T.D. and defendant and additional instructions on the elements of sexual assault.

Writing for the Appellate Division, Judge Long stated that the trial court had erred by not permitting defense counsel to inquire into the details of the stepfather's prior sexual assault. The court noted that the State conceded the occurrence of the prior acts and their close resemblance to the charges against defendant. It then concluded that defendant's constitutional right to confrontation under the federal and New Jersey constitutions required the admission of the details of the prior acts "to dispel the devastating implication that [a] * * * child of tender years could not have known of such intimate sexual acts unless they occurred at defendant's initiation." 243 *N.J.Super.* at 510, 580 *A.*2d 283. Ruling that the jury should have been told that an alternative source existed for T.D.'s sexual knowledge, the court reversed and remanded for a new trial. We agree that the probative value of the evidence outweighed its possible prejudicial effect. The evidence, however, is relevant, and therefore admissible, only to show an alternative source for

the infant's sexual knowledge, not to prove that she was likely to or actually did initiate sexual conduct with defendant.

## II

Once again we turn to the perplexing problems surrounding the reporting and prosecution of child sexual abuse. *See, e.g., State v. D.R.,* 109 *N.J.* 348, 537 *A.*2d 667 (1988) (concerning admissibility of child's out-of-court statements describing sexual abuse). Child sexual abuse cases raise many of the same vexatious questions raised in the prosecution of other types of sexual assault. Like rape victims, victims of such abuse may feel ashamed or guilty about the assault. Victims of both kinds of assault may be intimidated by a trial, especially cross-examination about the details of the event. Consequently, both rape and child sexual abuse have been underreported. *See* Estrich, *Rape,* 95 *Yale L.Rev.* 1087, 1161–69 (1986) (discussion of underreporting of rape); Note, *Victimizing the Child Victim: Vermont Rule of Evidence 807 and Trauma in the Courtroom,* 11 *Vt.L.Rev.* 631 (1986) (only one to ten percent of incidents of child sexual assault are ever disclosed). The trial of both kinds of cases poses difficult problems of proof for the prosecution and the defense. Generally, the act occurs in private, with only the victim and the assailant present. In the absence of independent witnesses, the case often turns on an assessment of the credibility of the participants, an assessment better left to the trier of fact. Our primary function is to provide guidelines for making that assessment.

In response to problems surrounding the reporting and prosecution of sexual assault cases, legislatures throughout the United States, including New Jersey, have enacted rape shield laws. See 243 *N.J.Super.* at 506 n. 1, 580 *A.*2d 283 (listing rape-shield laws). Those laws represent a legislative response to the common law rule permitting cross-examination of a rape victim about her prior sexual conduct. Such conduct was traditionally considered evidence of the victim's inclination to

consent to sexual intercourse and of her lack of moral character and credibility. Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 *Colum.L.Rev.* 1, 12–15 (1977); Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade,* 70 *Minn. L.Rev.* 763, 766–67, 792–94 (1986). Because of the "character assassination" of the victim, rape trials sometimes degenerated to embarrassing invasions of the victim's privacy. *See* Galvin, *supra,* 70 *Minn.L.Rev.* at 767.

 One of the primary purposes of the statutes is to protect rape victims from excessive cross-examination, thereby encouraging them to report the abuse. *Id.* at 805. The statutes also guard against the improper use of evidence of the victim's prior sexual experience. 23 C. Wright and K. Graham, *Federal Practice and Procedure,* Evidence § 5382 at 514–15 (1980); *see* Berger, *supra,* 77 *Colum.L.Rev.* at 30–31 (describing juror reluctance to vindicate rights of "unworthy" accuser). Thus, in addition to protecting victims of sexual assault, rape-shield statutes preserve the integrity of trials. Galvin, *supra,* 70 *Minn.L.Rev.* at 806. By ensuring that juries will not base their verdicts on prejudice against the victim, the statutes enhance the reliability of the criminal justice system.

Consistent with these policies, *N.J.S.A.* 2C:14–7 limits exceptions to the admission of evidence of a victim's previous sexual conduct in prosecutions for sexual assault and criminal sexual contact. When a defendant seeks to offer such evidence for any purpose, the trial court must, under the statute, weigh the probative value of the evidence against its prejudicial effect. The statute provides the following procedure for the admission of prior sexual conduct evidence:

> When the defendant seeks to admit such evidence for any purpose, he must apply for an order of the court before the trial or preliminary hearing * * *. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that evidence offered by the defendant regarding the sexual conduct of the victim is relevant and that the probative value of the evidence offered is not outweighed by its collateral nature or by the probability that its admission will create undue

prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim, the court shall enter an order setting forth with specificity what evidence may be introduced and the nature of the questions which shall be permitted * * *. [*N.J.S.A.* 2C:14-7(a).]

In addition, the statute prescribes the circumstances under which the trial court may consider the evidence to be relevant. The court may find evidence of prior sexual conduct relevant only if "it is material to negating the element of force or coercion or to proving that the source of semen, pregnancy or disease is a person other than defendant." *N.J.S.A.* 2C:14-7(c). For all other purposes, the statute declares evidence of prior sexual conduct irrelevant. To this extent, the statute differs from *Federal Rule of Evidence* 412, which, in addition to permitting evidence of past sexual behavior to show the source of semen or injury, permits such evidence if "constitutionally required." *Fed.R.Evid.* 412(b)(1), (2).

Here, defendant does not dispute that the statute bars admission of evidence of T.D.'s prior sexual victimization. He argues, however, that by restricting the purposes for which the evidence may be admitted, the statute deprives him of a defense. Defendant contends that the evidence of T.D.'s prior sexual abuse is relevant to rebut the inference that she would not have sufficient knowledge of sexual acts to behave as he described. In addition, defendant asserts that because T.D. is a minor and therefore legally incapable of consent, the admission of the evidence will not prejudice her or contravene the statutory purposes. Consequently, defendant claims that application of the statute in this case violates his constitutional right to confrontation. Hence, we turn to an analysis of that right.

## III

■ Both the federal and New Jersey constitutions guarantee criminal defendants the right "to be confronted with the witnesses against them." *U.S. Const.* amend VI; *N.J. Const.* art. 1, para. 10. Among the primary interests protected by the right of confrontation are the opportunity for defendants to

face their accusers and to cross-examine the state's witnesses. *Pennsylvania v. Ritchie*, 480 *U.S.* 39, 51, 107 *S.Ct.* 989, 998, 94 *L.Ed.*2d 40, 53 (1987); *Davis v. Alaska*, 415 *U.S.* 308, 315, 94 *S.Ct.* 1105, 1110, 39 *L.Ed.*2d 347, 353 (1974); *California v. Green*, 399 *U.S.* 149, 157–58, 90 *S.Ct.* 1930, 1935, 26 *L.Ed.*2d 489, 496–97 (1970). The right protects against improper restrictions on questions defense counsel may ask during cross-examination. *Ritchie, supra*, 480 *U.S.* at 52, 107 *S.Ct.* at 999, 94 *L.Ed.*2d at 54. It further encompasses the right to elicit favorable testimony on cross-examination of the state's witnesses. *See Davis, supra*, 415 *U.S.* at 318, 94 *S.Ct.* at 1111, 39 *L.Ed.*2d at 354–55; *see also* Weston, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 *Harv.L.Rev.* 567, 604–06 (1978) (distinguishing confrontation, which permits examination of adverse witnesses, and compulsory process, which guarantees defendant's right to call and examine witnesses for defense). Coupled with the rights to compulsory process and to due process, the right of confrontation guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 *U.S.* 683, 690, 106 *S.Ct.* 2142, 2146, 90 *L.Ed.*2d 636, 645 (1986).

■ The right to confront and cross-examine accusing witnesses is "among the minimum essentials of a fair trial," *Chambers v. Mississippi*, 410 *U.S.* 284, 294–95, 93 *S.Ct.* 1038, 1045, 35 *L.Ed.*2d 297, 308 (1973); (citing *In re Oliver*, 333 *U.S.* 257, 273, 68 *S.Ct.* 499, 507, 92 *L.Ed.* 682, 694 (1948)), and applies to the states through the fourteenth amendment, *Pointer v. Texas*, 380 *U.S.* 400, 85 *S.Ct.* 1065, 13 *L.Ed.*2d 923 (1965). This right, however, is not absolute, and may, in appropriate circumstances, bow to competing interests. *Chambers, supra*, 410 *U.S.* at 295, 93 *S.Ct.* at 1046, 35 *L.Ed.*2d at 309; *Mattox v. United States*, 156 *U.S.* 237, 242, 15 *S.Ct.* 337, 340, 39 *L.Ed.* 409, 411 (1895) (confrontation clause must yield to considerations of public policy and necessities of case). States may exclude evidence helpful to the defense if exclusion serves the

interests of fairness and reliability. *Crane, supra,* 476 *U.S.* at 690, 106 *S.Ct.* at 2146, 90 *L.Ed.*2d at 644; *Delaware v. Fensterer,* 474 *U.S.* 15, 20, 106 *S.Ct.* 292, 294, 88 *L.Ed.*2d 15, 19 (1985) (confrontation clause guarantees the *"opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish"). Thus, trial courts "retain wide latitude * * * to impose reasonable limits on * * * cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 *U.S.* 673, 679, 106 *S.Ct.* 1431, 1435, 89 *L.Ed.*2d 674, 683 (1986); *see also* Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 *U.Pa.L.Rev.* 544, 558 (1980) (neither logic nor case law indicates defendant's sixth-amendment right compels admission of evidence the prejudicial effect of which outweighs probative value). Because confrontation is fundamental to a fair trial, however, its "denial or significant diminution calls into question the ultimate integrity of the fact-finding process and requires that the competing interests be closely examined." *Chambers, supra,* 410 *U.S.* at 295, 93 *S.Ct.* at 1046, 35 *L.Ed.*2d at 309.

Relying on the Rape Shield Statute, the trial court restricted significantly defendant's cross-examination of both T.D. and Detective Cetuk. In reviewing those restrictions, we confront two questions. First, we must ascertain, apart from the Rape Shield Statute, whether the evidence was relevant to the defense. If the evidence is relevant, we then must decide whether its probative value outweighs its prejudicial effect. *See Crane, supra,* 476 *U.S.* at 689–90, 106 *S.Ct.* at 2146, 90 *L.Ed.*2d at 644–45; *Davis, supra,* 415 *U.S.* at 319, 94 *S.Ct.* at 1111, 39 *L.Ed.*2d at 355. If so, the evidence may not constitutionally be excluded.

When a defendant seeks to elicit evidence of the prior sexual abuse of a child, the Rape Shield Statute directs trial

courts to conduct a pre-trial *in camera* hearing. *N.J.S.A.* 2C:14–7. The probative value of the prior acts depends on clear proof that they occurred, that the acts are relevant to a material issue in the case, and that they are necessary to the defense. *State v. Pulizzano*, 155 *Wis.*2d 633, 655–56, 456 *N.W.*2d 325, 335 (1990). When evidence is offered to show a child's knowledge of sexual acts, its relevance also depends on whether the prior abuse closely resembles the acts in question. *See State v. Padilla*, 110 *Wis.*2d 414, 428–29, 329 *N.W.*2d 263, 271 (Wis.Ct.App.1982). The reason for requiring similarity between the acts is that prior acts are more likely to affect the child's ability to describe the acts in question if they closely resemble the previous ones.

When assessing the prejudicial effect of such evidence, the court should consider the likely trauma to the child and the degree to which admission of the evidence will invade the child's privacy. Such prejudice may be diminished if the evidence can be adduced from sources other than the child. In the present case, as the Appellate Division suggested, the evidence could have been elicited from another witness, the official documents involving the convictions arising out of the prior abuse, or by stipulation. 243 *N.J.Super.* at 513, 580 *A.*2d 283. If the victim is questioned about the prior abuse, the court should guard against excessive cross-examination. Furthermore, the court should limit any such examination to the information relevant to the defense. By controlling cross-examination of the victim, the trial court can prevent the "pointless and cruel foraging" feared by the dissent. *Post* at 544–45, 593 *A.*2d at 796–97.

The proper balance of relevance and prejudicial effect depends on the facts of each case. For example, both considerations can vary with the age of a child. We recognize that everyone, young and old alike, is inundated with information on sexuality. Sources include television, movies, tabloids, and magazines. As children mature, they likely will learn about

sexuality from many sources. Thus, evidence of prior sexual experience is less probative in cases involving older children. Conversely, the possibility of prejudice increases as a child matures. A constant concern is that the evidence may divert the jury's attention from the behavior of the defendant to that of the victim. For example, the evidence may mislead a jury to conclude that one who assaults a more sexually experienced child is not culpable, especially if the child initiated the encounter.

■ In this case, the evidence of T.D.'s prior abuse by her stepfather and her consequent knowledge of sexual acts is relevant to the defense in two ways. First, it rebuts the inference that T.D. acquired the knowledge to describe sexual matters from her experience with defendant. *See, e.g., Commonwealth v. Ruffen*, 399 *Mass.* 811, 815, 507 *N.E.*2d 684, 687 (1987) (evidence of prior sexual abuse relevant to show why such a child would know enough about sexual matters to describe them). Second, the evidence is relevant to show that T.D. had the knowledge to initiate the sexual acts as described by defendant.

■ The State argues that evidence of an infant's ability to describe sexual acts is relevant only in those cases in which the defendant denies that any sexual contact occurred. Here, the State contends that defendant does not deny that T.D. could have learned to describe sexual acts from her encounters with him. We disagree. Defendant denies that he ever had vaginal intercourse with T.D. or that his penis ever came in contact with her vaginal area. By contrast, T.D. claims that defendant placed his penis in her vagina. To the extent that their stories differ about the nature of the contact, T.D.'s ability to describe the sexual acts relates to the defense.

■ Moreover, the State concedes not only the occurrence of the prior abuse by T.D.'s stepfather, but that it closely resembled the charges against defendant. Indeed, as the Appellate Division observed, T.D. used nearly identical language

to describe each of the incidents. 243 *N.J.Super.* at 512, 580 *A.2d* 283. Under these circumstances, evidence that T.D. had learned about vaginal intercourse from a source other than defendant supports his contention that he did not have intercourse with her. The majority of out-of-state courts agree that the prior sexual abuse of a youthful victim is relevant to rebut the inference that the complainant could not describe the details of sexual intercourse if the defendant had not committed the acts in question. *See, e.g., State v. Oliver,* 158 *Ariz.* 22, 28, 760 *P.*2d 1071, 1077 (1988) (evidence of prior sexual abuse relevant to show ability to fabricate); *State v. Jacques,* 558 *A.*2d 706, 708 (Me.1989) (prior sexual abuse of victim admissible to rebut the inference of child's inability to describe accurately acts of sexual intercourse); *Ruffen, supra,* 399 *Mass.* at 815, 507 *N.E.*2d at 687 (prior sexual abuse of ten-year-old relevant to show child's personal knowledge of sexual acts and terminology); *Summit v. State,* 101 *Nev.* 159, 163–64, 697 *P.*2d 1374, 1377 (1985) (evidence of prior sexual abuse relevant to rebut inference that sexual abuse described by six-year-old complainant must have occurred or she could not have described it); *State v. Baker,* 127 *N.H.* 801, 805, 508 *A.*2d 1059, 1062 (1986) (due process requires admission of prior sexual experience of youthful victim to show knowledge of sexual acts); *People v. Ruiz,* 71 *A.D.*2d 569, 570, 418 *N.Y.S.*2d 402, 403 (1979) (prior sexual experience of victim admissible to show ability to describe acts of sexual intercourse); *Pulizzano, supra,* 155 *Wis.*2d at 651–53, 456 *N.W.*2d at 333 (prior sexual abuse relevant to show alternative source for sexual knowledge). Respected scholars agree with those courts. *See, e.g.,* Galvin, *supra,* 70 *Minn.L.Rev.* at 865–67 (prior sexual abuse of child should be admissible to show source of knowledge); Myers, *The Child Witness: Techniques for Direct Examination, Cross–Examination and Impeachment,* 18 *Pac.L.J.* 801, 905–07 (1987) (evidence of prior abuse should be admitted to counteract inference drawn from child's description of abuse); Comment, *Rape Shield Statutes: Constitutional Despite Unconstitu-*

*tional Exclusions of Evidence,* 1985 *Wisc.L.Rev.* 1219, 1234 (prior abuse relevant to show child's ability to describe sexual acts emanated from source other than defendant).

The dissent finds that the evidence of T.D.'s prior sexual abuse is only marginally relevant. *Post* at 542, 593 *A.*2d at 795. In so finding, the dissent disagrees with our conclusion that the evidence is highly relevant, a conclusion shared by the Appellate Division, *State v. Ross,* 249 *N.J.Super.* 246, 251–53, 592 *A.*2d 291, 293–94, *cert. denied,* —— *N.J.* —— (1991); 243 *N.J.Super.* at 513, 580 *A.*2d 283; and by the majority of out-of-state cases. *Supra* at 534–35, 593 *A.*2d at 791–92. Although we recognize that children today are more sexually sophisticated than those of an earlier era, we doubt that a jury would expect a nine-year-old girl to describe the actions of cartoon prize fighters as looking like one boxer "was sucking the other guy off." We likewise doubt that a jury would expect a child of such tender years to know the intricacies of oral and vaginal sex. Contrary to the dissent's assertion, *post* at 542, 593 *A.*2d at 795, it is not an "unproven myth" that sexual abuse contributes to a child's ability to describe sexual acts. Indeed, authorities recognize that such abuse significantly enhances that ability. Myers, *supra,* 18 *Pac.L.J.* at 906 ("prior sexual experience with individuals other than defendant may improperly enhance the believability of the child's description of fabricated or imagined abuse"); Lloyd, *The Corroboration of Sexual Victimization of Children,* in A.B.A. National Legal Resource Center for Child Advocacy & Protection, Child Sexual Abuse and the Law, 103, 105 (3d ed. 1982) ("[t]he child who can describe an adult's erect penis and ejaculation has had direct experience with them").

By contrast, adults generally have greater sexual knowledge than children. Consequently, a jury would be less likely to assume that an adult rape victim learned to describe sexual acts from the incident with her assailant. Hence, the dissent's analogy to adult rape victims is misplaced. *Post* at 544, 546, 548, 593 *A.*2d at 796, 797, 798.

The crux of the defense is not that T.D. fabricated the incidents, but that she initiated them, and that defendant promptly tried to stop her. To this aspect of the defense, evidence of an alternative source of T.D.'s sexual knowledge is crucial. Judge Long noted that the jury would naturally be disinclined to believe that a nine-year-old child would know enough about sexual acts to initiate the alleged encounters. 243 *N.J.Super.* at 510, 580 *A.*2d 283. Without concrete evidence that T.D. knew of such acts, defendant's explanation for the incidents is subject to disbelief.

The dissent contends that because consent is not a defense to a charge of child sexual abuse, evidence that T.D. initiated the sexual conduct with defendant is irrelevant. That contention is incorrect. Although defendant claims that T.D. initiated the sexual contact, his defense is not that she consented to the sexual acts. Instead, he claims that T.D. approached him and that he immediately rebuffed her. Defendant's version, if believed by the jury, would constitute a defense. Thus, evidence that tends to support his claim that T.D. knew how to initiate these acts is "exquisitely important" to the defense. 243 *N.J.Super.* at 510, 580 *A.*2d 283. Although the jury may reject defendant's contention that the victim initiated the acts, the issue remains one for the jury's consideration. The implication of the dissent, however, is that an accused may be convicted of child sexual abuse even if the child approached him and he immediately rebuffed her.

In this case, the prosecutor's summation highlighted the relevance of the evidence. The prosecutor argued that defendant's version of the incidents was unbelievable because of T.D.'s age. Because the State placed in issue T.D.'s knowledge of sexual acts, defendant should be permitted to adduce evidence of an alternative source of her knowledge. *Ross, supra,* 249 *N.J.Super.* at 249–50, 592 *A.*2d at 292–93.

The State relies primarily on three cases from other jurisdictions to support its argument that the trial court properly

excluded the evidence. *See State v. Clarke,* 343 *N.W.*2d 158, 162–63 (Iowa 1984) (evidence of prior sexual experience not admissible to show ability to fantasize act of oral sex); *People v. Arenda,* 416 *Mich.* 1, 12, 330 *N.W.*2d 814, 818 (1983) (when defendant makes no offer to prove prior sexual abuse, prejudice to victim outweighs probative value of evidence); *Commonwealth v. Appenzeller,* 388 *Pa.Super.* 172, 176–77, 565 *A.*2d 170, 171–72 (1989) (evidence of prior sexual abuse irrelevant in subsequent sexual abuse trial), *appeal denied,* 588 *A.*2d 507 (1990). We disagree with these cases, which represent a minority view. Moreover, in *Arenda, supra,* 416 *Mich.* at 6, 330 *N.W.*2d at 815, the trial court permitted defense counsel to question an eight-year-old victim concerning the child's sexual conduct with others, which the child repeatedly denied. The Michigan Supreme Court affirmed the trial court's ruling that in the face of the child's denial and in the absence of an offer of proof that such conduct had occurred, defense counsel could not continue that avenue of inquiry. *Ibid.* In *Clarke,* unlike in the present case, the defendant sought to question the victim about prior sexual conduct that was voluntary. Furthermore, the defendant did not make an offer of proof of the victim's prior sexual experience or make any showing that the "excluded" evidence existed. 343 *N.W.*2d at 159. Here, the State concedes that the prior acts occurred and that they closely resemble those allegedly committed by defendant. In sum, we find the cases cited by the State to be unpersuasive.

We now turn to the second issue, whether the prejudicial effect of the evidence outweighs its probative value. The Rape Shield Statute directs trial courts to consider whether evidence of prior sexual conduct will "create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim." *N.J.S.A.* 2C:14–7. Similarly, the confrontation clause does not compel the admission of evidence that will prejudice the victim, jeopardize her safety, or confuse the jury. *Van Arsdall, supra,* 475 *U.S.* at 679, 106 *S.Ct.* at 1435, 89 *L.Ed.*2d at 683. Consequently, we must consider both the prejudice to

the victim and the possibility of subversion of the trial process by confusing the jury or permitting a verdict based on improper grounds.

The Appellate Division concluded that the admission of evidence of prior sexual abuse cannot prejudice the victim or contravene the purposes of the Rape Shield Statute. 243 *N.J.Super.* at 512–13, 580 *A.*2d 283. Both the Somerset County prosecutor and the Attorney General vigorously challenge that conclusion. They contend that even when the evidence is not offered to degrade the victim or to impugn the victim's character, its admission may chill reporting of other offenses. We find their contention has merit. Our abiding concern is that to avoid subjecting their already-stigmatized children to the further trauma of litigation, parents may not report instances of child abuse. *See* Libai, *The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System,* 15 *Wayne L.Rev.* 977, 983–86, 1015 (1969) (chronicles effects of "legal process trauma"). The admission of evidence that may embarrass children, subject them to more intensive interrogation, or further invade their privacy may add to parental reluctance to permit their children to testify. Also, admission of such evidence may intensify whatever anxiety children suffer from testifying in court. *See D.R., supra,* 109 *N.J.* at 360, 537 *A.*2d 667 (courtroom experience stressful and intimidating for children); *State v. Sheppard,* 197 *N.J.Super.* 411, 420, 484 *A.*2d 1330 (Law Div.1984); Libai, *supra,* 15 *Wayne L.Rev.* at 1015.

Finally, depending on the age of the victim, the possibility exists that the jury may misuse the evidence. Because trusted adults may exploit their position to commit sexual abuse, a child may appear to be a "willing" participant. In such a case, prior sexual abuse may focus the jury's attention on the child's behavior instead of the defendant's. Confronted with a sexually sophisticated victim, a jury may be inclined to excuse a defendant who claims that the victim initiated the acts. Thus,

the trial court should instruct the jury that a child's apparent "consent" or "willingness" does not exculpate a defendant.

In the present case, we agree with the Appellate Division that the evidence of T.D.'s prior victimization may be admitted without undue prejudice. First, defense counsel may be able to elicit the evidence through cross-examination of Detective Cetuk without subjecting T.D. to cross-examination. If the trial court should allow cross-examination of T.D. on her prior abuse, it should confine the examination to her recollection of the occurrence. Defense counsel may not try to show on cross-examination of T.D. that her prior victimization enhanced the likelihood that she initiated the encounters with defendant. As the Appellate Division commented, the prior abuse "was unlikely to prejudice [T.D.] in the jury's eyes. Indeed, the contrary is true. Sympathy for her plight was the more likely response." 243 *N.J.Super.* at 513, 580 *A.*2d 283. We are sensitive to the possibility that evidence of T.D.'s prior abuse may invade her privacy and cause her anxiety or embarrassment. On balance, we believe that these factors do not outweigh the significant probative value of the evidence. The trial court, however, should deliver an instruction on the limited purpose of the evidence and expressly instruct the jury that it may not consider the evidence as an attack on T.D.'s character. The sole purpose of the evidence is to rebut any inference about the source of T.D.'s knowledge of sexual practices and her ability to describe or initiate sexual acts.

Contrary to the dissent's assertion, this case has nothing to do with "the mythology that once pervaded the jurisprudence of rape" that an "unchaste" woman is more likely to consent to a sexual assault. *Post* at 544, 593 *A.*2d at 796. As we have stated, evidence of the victim's prior sexual abuse may not be used to support an inference that she "consented" to the acts with defendant. Plainly stated, the victim's "consent" is not an issue. Moreover, defense counsel may not use evidence of prior sexual abuse to impugn T.D.'s character or to impeach her

credibility. To the contrary, the relevance of the evidence is limited to her knowledge of sexual acts.

Like the Appellate Division, we cannot find that the omission of this evidence was harmless beyond a reasonable doubt. See *Rule* 1:7–5. Although evidence was adduced about T.D.'s prior abuse, the restrictions on defense counsel's cross-examination diluted the connection between T.D.'s sexual awareness and that abuse. That restriction prevented the jury from learning that T.D.'s stepfather, not defendant, may have been the source of her knowledge of vaginal and oral sex. The jury's determination of defendant's guilt depended on whether it believed his story or T.D.'s. In that context, we cannot say that the omission of evidence crucial to the credibility of defendant's version was harmless error. We agree with the Appellate Division that the jurors, "as triers of fact and as sole judges of credibility," were entitled to know that defendant may not have been the sole source of T.D.'s sexual knowledge. 243 *N.J.Super.* at 515, 580 *A.*2d 283.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the Law Division.

O'HERN, J., dissenting.

Neither the Constitution of the United States nor the Constitution of the State of New Jersey requires that we reverse this child sexual-abuse conviction.

[T]he Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta,* 467 *U.S.* [479,] 485 [104 S.Ct. 2528, 2532] 81 *L.Ed.*2d 413 [ (1984) ]. * * * That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing." [*Crane v. Kentucky,* 476 *U.S.* 683, 690–91, 106 S.Ct. 2142, 2146–47, 90 *L.Ed.*2d 636, 645 (1986) (quoting *United States v. Cronic,* 466 *U.S.* 648, 656, 104 S.Ct. 2039, 2045, 80 *L.Ed.*2d 657, 666 (1984)).]

That proposition stated by the United States Supreme Court in the context of evidence pertaining to the credibility of confession is generally applicable here.

The critical question that we must decide then is whether the proffered evidence is "central to the defendant's claim of innocence." *Id.* at 690, 106 S.Ct. at 2147, 90 *L.Ed.*2d at 645. I fail to see how forcing this child-victim to relive her traumatic experiences can be thought to be central to defendant's claim of innocence.

The relevance of this evidence is so marginal to defendant's case' that its exclusion should not cause a reversal of his conviction. The apparent thesis of defendant's argument is that he should be excused from liability for this criminal offense on the basis that the youthful victim not only consented to the sexual encounters but initiated them. The law affords no such defense. New Jersey's Criminal Code proscribes the kind of sexual contact alleged in this case, whether or not the victim had consented, when the victim is less than thirteen-years old. *N.J.S.A.* 2C:14-2a(1). That a child may have initiated such contact makes no difference under our law. *See* J. Cannel, *N.J. Code of Criminal Justice* 2C:14-2 Comment 1 (1991) ("There was no desire to allow [an under-age girl] to make this decision at all. Thus, the volition of the girl was not being protected and was irrelevant."). Even apart from our own statutory guidelines on relevancy, "[i]n most cases, the relevancy, if any, of such evidence will be minimal. A jury is unlikely to consider a witness's ability to describe sexual conduct as an independent factor supporting a conviction. This ability, unlike pregnancy, semen or disease, need not be acquired solely through sexual conduct." *People v. Arenda,* 416 *Mich.* 1, 12, 330 *N.W.*2d 814, 818 (1982). This evidence of prior abuse is far from being "central" to defendant's "claim of innocence."

Beyond that, I believe that the Court now imposes greater barriers in the trial of child sexual-abuse cases than is required

by the Constitution. A good model for analysis may be found in the exceptions to the *Federal Rule of Evidence* 412, the federal rape-shield law. That law codifies the types of exceptions that perhaps would be constitutionally required. For example, the Rule allows a defendant to submit evidence of the victim's past sexual behavior to explain how another might be the source of the injury or semen. *Fed.R.Evid.* 412(b)(2)(A). Also, in some circumstances the prior conduct may show a possible motive to accuse falsely. *State v. Jalo,* 27 *Or.App.* 845, 557 *P.*2d 1359 (1976).

What does defendant seek to prove by his offer of evidence in this case? Defendant is not attempting to show that another may have sexually abused the child; in fact, defendant admits that sexual contact did occur between himself and the victim. Defendant apparently seeks to dispel some unproven myth that young children are so sexually naive that they could not possibly use explicit language to describe sexual contact absent the experience. Defendant argues, therefore, that to overcome that assumption on the part of jurors we must permit the admission of the evidence of the child's past.

In our society, the child rape victim suffers so much. First, the child suffers the personal violation that is the rape. (I use that word even though the Criminal Code does not use that expression; the Code uses other terms to describe the sexual acts.) Then the child suffers the traumatic ordeal of the trial. *See* Note, *Victimizing The Child Victim: Vermont Rule of Evidence 807 and Trauma in the Courtroom,* 11 *Vt.L.Rev.* 631, 644–52 (1986). To allow a reexamination of past sexual abuse in order to dispel unproven assumptions only adds to the child's suffering. I cannot believe that the Constitution requires such suffering in order to dispel what is at best the supposition of lawyers and judges. Unless we are very careful in the application of this doctrine, the "child subjected to victimization [will be] victimized a second time by the system that is supposed to be fashioning a remedy to protect the child."

Schretter, *Laws to Protect the Child Victim in the Court-room*, 5 *N.J. Trial Lawyer* 25, 25 (July 1991).

We are perhaps a bit too removed from the modern world to realize the changes that have taken place. The young prosecutor who presented this case to us, himself the father of a young child, informed us of the startling change in youthful knowledge of sexual matters. One need glance only at the material that passes before their eyes at a supermarket checkout counter to know what many children observe of life. Add to that the constant barrage of explicit sex that pervades popular entertainment. We cannot safely assume that children necessarily learn such words or such actions from a single sexual contact.

In many ways the attitude of courts (not just the New Jersey Supreme Court), see *ante* at 534–35, 593 *A*.2d at 791–92, with respect to child sexual-abuse cases appears to be a repetition of the mythology that once pervaded the jurisprudence of rape. *See* Steinmetz, *State v. Oliver: Children with a Past; The Admissibility of the Victim's Prior Sexual Experience in Child Molestation Cases*, 31 *Ariz.L.Rev.* 677, 680–81 (1989). As one court put it, " 'The underlying thought here is that it is more probable that an unchaste woman would assent * * * than a virtuous woman.' [*People v. Collins*, 25 *Ill.*2d 605, 611, 186 *N.E.*2d 30, 33 (1962).] * * * [T]he premise of this rationale was based on the presumption that '[t]ruthfulness and chastity in women were thought to be virtues that were found only together. No "unchaste" woman was expected to be truthful.' " *People v. Sandoval*, 135 *Ill.*2d 159, 168, 142 Ill.Dec. 135, 139–40, 552 *N.E.*2d 726, 729–30 (quoting Murphy, *Rape Shield Statute Upheld by Illinois Appellate Court*, 69 *Ill.B.J.* 110, —— (1980)), *cert. denied*, —— *U.S.* ——, 111 S.Ct. 343, 112 *L.Ed.*2d 307 (1990). The result was that defense counsel were permitted to subject the victims of sexual crimes to "pointless and cruel foraging into sexual history, thus subjecting the complainant to needless psychological or emotional abuse." Note, *United States v. Shaw: What Constitutes an "Injury"*

*under the Federal Rape–Shield Statute?*, 43 *U.Miami L.Rev.* 947, 951 (1989).

We have heretofore stressed the need to shield child victims of sexual abuse from unnecessary intrusion into their lives. "Our criminal justice system recognizes fully a defendant's right to prepare a defense and have complete discovery. However, allowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws." *State v. R.W.*, 104 *N.J.* 14, 28, 514 *A.*2d 1287 (1986) (denying psychological examination of child-victim witnesses except on substantial showing of need). We noted that

defendants charged with sexual offenses against female victims of all ages have historically based attacks against witness reliability on unsound stereotypical notions of the nature of women. *See, e.g.,* 3 *J. Wigmore, Evidence* § 924(a) (3rd ed. 1940). We totally repudiate such thinking. *See, e.g., State v. Kelly,* 97 *N.J.* 178, 478 *A.*2d 364 (1984). Contemporary understanding springs from very different perceptions and knowledge of temperament and gender. *See N.J.S.A.* 2C:14–7 (Rape–Shield statute). [*Id.* at 30 n. 4, 514 *A.*2d 1287.]

This is not the case in which to depart from that commitment. To begin with, the use of what essentially is character evidence to impeach a witness is almost unheard of in the law. With rare exceptions, as in the case of evidence of traits concerning honesty or veracity, the evidence of past character is simply not admissible to impeach the testimony of a witness. *See Fed. R.Evid.* 608; *Evid.R.* 22. There are five traditional techniques or modes of impeachment: first, "the credibility of a witness may be attacked by proving that the witness made prior statements that are inconsistent with her or his trial testimony"; second, "credibility may be undermined by proof that the witness is biased or interested"; third, "evidence of a witness's character may be offered to prove that the witness is unworthy of belief"; fourth, "testimony may be impeached by proof of defects in a witness's capacity to observe, remember, or relate"; and finally, "extrinsic evidence may be used to contradict a witness's testimony." Myers, *The Child Witness: Techniques for Direct Examination, Cross–Examination, and Impeach-*

*ment,* 18 *Pac.L.J.* 801, 910–11 (1987). However, those circumstances in which evidence of a witness's character may be offered to prove that the witness is unworthy of belief are sharply limited by the New Jersey *Rules of Evidence.* Only evidence of the traits of "honesty or veracity or their opposites" can be used for that purpose. *Evid.R.* 22. Proof of specific acts of sexual activity with persons other than the defendant "is ordinarily insufficiently probative * * * of [a victim's] general credibility as a witness * * * to outweigh its highly prejudicial effect." *United States v. Kasto,* 584 *F.*2d 268, 271–72 (8th Cir.1978), *cert. denied,* 440 *U.S.* 930, 99 S.Ct. 1267, 59 *L.Ed.*2d 486 (1979); *see also People v. Wilson,* 678 *P.*2d 1024 (Colo.Ct.App.1983) (in sexual-assault case, deletion of portions of child-victim's diary relating prior sexual acts with others was proper), *cert. denied,* 469 *U.S.* 843, 105 S.Ct. 148, 83 *L.Ed.*2d 87 (1984).

Moreover, the "insult and intimidation" that women endure "during rape trials prompted states to enact 'rape shield' laws, designed to control or prohibit the use of evidence relating to the victim's general sexual behavior." *The Supreme Court— Leading Cases—Sexual Harassment—Hostile Work Environment,* 100 *Harv.L.Rev.* 276, 284 n. 44 (1986). Courts had previously permitted defense counsel to ask victims questions about their use of birth control, attendance at bars, illegitimate children, and number of prior sexual experiences. Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 *Colum.L.Rev.* 1, 14 (1977). It would be the cruelest paradox if the rape-shield laws enacted to protect women from those indignities and to counteract myths that women consent to forcible sex would now be interpreted to require the admission of just such evidence of prior sexual conduct when, due to the age of the victim, consent is not even an issue.

In the vast majority of cases involving adult victims in which consent may be considered to be critical to the defense, the evidence sought to be introduced here would be totally inadmissible. Evidently, because of an assumption that children are

naive or innocent, the majority believes that we must counteract that assumption by permitting the very indignities to be inflicted on this child victim that we would not inflict on an adult victim. The Constitution does not require that myths be dispelled in that way. There may be a situation in which a prosecutor seeks to present a case on the basis that the victim could not have learned the sexual terms used from any source other than the defendant. *See, e.g., State v. Ross,* 249 *N.J.Super.* 246, 592 *A.*2d 291 (App.Div.1991). Absent some attempt by the State to do that, the court need only instruct the jury that it should not draw any inferences from the language used by the child and that it should not in any sense attribute the child's sexual knowledge to the defendant. The court could explain to the jury that there are many sources of such information in our society, and that whether defendant sexually assaulted the victim remains for it to determine. *See* Eatman, *Minor Victims of Sexual Assault,* 26 *N.H.B.J.* 199, 205 (1985) (court could instruct jury that child is familiar with sexual terminology and concepts and that it is not to presume that child is naive).

At most, the evidence here supports the factual proposition that the victim initiated the event, something that is irrelevant in the case of sexual relations with a child. The law of child sexual abuse is very strict. Victim initiation is simply no defense when a defendant admits having had a sexual encounter with a child who is less than thirteen-years old. This defendant was not a helpless victim; he was a competent and knowing adult. An adult cannot engage in the kind of conduct that has been alleged in this case.

The majority emphasizes that defendant denies that he had vaginal intercourse with the child. *Ante* at 534, 593 *A.*2d 791. But by his own account defendant engaged in conduct involving oral sexual contact by the child. That constitutes aggravated sexual assault. *See N.J.S.A.* 2C:14–1c (defining sexual penetration to include both vaginal and oral forms of sexual contact). Although defendant claims that he did not initiate the

encounters with the child, he testified that the time during which the contact occurred "could have been five seconds, it could have been four seconds, it could have been a minute and a half, it could have been thirty seconds." Even accepting defendant's statements as true, his conduct constituted aggravated sexual assault.

Only one other argument can be made for the admissibility of the evidence: that the description of the prior incident with the victim's stepfather so closely paralleled the description of this incident that it suggests possible fabrication. We might concede some relevance to the prior experience if there were something unusual about the event described, rather than the regrettably dreary sameness to almost every such act with a child. This was far from any type of "signature" crime. See *People v. Sandoval, supra,* 135 *Ill.*2d 159, 142 Ill.Dec. 135, 552 *N.E.*2d 726 (suggesting that that quality in a prior offense might establish relevance). Even if some relevance were accorded to the evidence in those circumstances, a court must still decide if the probative worth of the evidence to the defendant bears sufficiently on what is at issue to overcome its prejudicial effect. The Legislature, in enacting the rape-shield law, has said that in admitting evidence of the victim's prior sexual activity, there is prejudice *per se.* Even if the child were the initiator of the encounter with defendant, that is not sufficiently probative in my mind to dispel criminal liability. The whole purpose of the rape-shield law is to get rid of prejudicial inferences such as "she asked for it." To test the majority's logic we must ask: in an adult case if a woman were to have given a graphic description of a brutal rape on a prior occasion in the same way that she described the incident at issue, would that ever be considered a reason to circumvent the rape-shield law? I should think not. The evidence should not be admissible in this child's case.

Moreover, the trial court exercised its discretion to permit the jury to know that a prior criminal complaint had been filed against the stepfather, and in closing arguments counsel for

defendant was free to comment on those matters. A reasonable accommodation of defendant's interest in having that information before the jury was made in the circumstances of this case.

The respected constitutional scholar, Laurence H. Tribe, expressed to Congress his support for the passage of the federal rape-shield act:

> No reform is without its costs and difficulties; [this act] is no exception. But nothing in the proposed amendment to the Federal Rules of Evidence would override the defendant's due process right in extraordinary circumstances to adduce crucial evidence of innocence; only the occasional loss of marginally relevant evidence can plausibly be attributed to the amendment, and that seems an eminently reasonable price to pay for an important humanization of the trial process in cases where the charge is rape. [*Privacy of Rape Victims: Hearing on H.R. 14666 Before The Subcomm. on Criminal Justice of the House Comm. on the Judiciary*, 94th Cong., 2d Sess. 54–55 (1976) (letter from Prof. Laurence H. Tribe, Harvard Law School).]

Those concerns resound as well in the case of a child victim. "A child no less than an adult [should be] protected from having her prior sexual history paraded in public and from having unfair inferences drawn therefrom." *Commonwealth v. Appenzeller*, 388 *Pa.Super.* 172, 177, 565 *A.2d* 170, 172 (1989).

The judgment of conviction should be reinstated.

Justice HANDLER joins in this opinion.

*For affirmance and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, GARIBALDI and STEIN—5.

Justices HANDLER and O'HERN, dissenting—2.