# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4515-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.C.-A.,

    Defendant-Appellant.

_____

Submitted December 16, 2020 – Decided July 26, 2021

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-08-1143.

Joseph E. Krakora, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Joie Piderit, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant M.C.-A. appeals from the trial court's order denying, without an evidentiary hearing, his petition for post-conviction relief (PCR).[1] Defendant collaterally attacks his jury trial conviction of multiple crimes arising out of his sexual assault of his step-daughter, E.D. (Edith), when she was between nine and sixteen years old. The convictions include two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); one count of first-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(3); and four second- and third-degree crimes. Defendant received an aggregate thirty-four-year custodial term, subject to Megan's Law, N.J.S.A. 2C:7-1 to -23, and the No Early Release Act, N.J.S.A. 2C:43-7.2.

We assume the reader's familiarity with the facts that supported defendant's conviction, which we reviewed in detail in affirming defendant's conviction and sentence on direct appeal. See State v. M.C.-A., No. A-1509-14 (App. Div. Aug. 8, 2017) (M.C.-A. I), certif. denied, 232 N.J. 104 (2018).

---

[1] We variously employ initials and fictitious names to identify defendant, the juvenile victim of the crimes for which defendant was convicted, and other witnesses because disclosure of the identity of a victim of sexual assault under the age of eighteen is prohibited, N.J.S.A. 2A:82-46, and because the names of child victims of sexual assault under N.J.S.A. 2A:82-46, and the names of victims of sexual offenses, are otherwise excluded from public access, R. 1:38-2(c)(9), (12).

Defendant's pro se petition identified no grounds for relief, stating he would provide them after counsel was assigned. In his counseled petition, he asserted his trial counsel was ineffective. He identified two issues that he claimed he brought to his attorney's attention, but which his attorney ignored.

First, he contended that counsel did not adequately pursue Edith's alleged recantation. Defendant stated that Edith sent him an "email/Facebook Instant Message where she apologized for accusing me and recanted her statements." Defendant claimed his step-daughter wrote, "I'm sorry Daddy. I didn't want to do this to you. Mommy made me do this. Mommy didn't believe me that it didn't happen." Defendant claimed he "accidentally deleted the message." He asked his attorney to retain an expert to retrieve the message and his attorney did not do so, and his attorney did not cross-examine Edith about the alleged message at trial.

Second, he contended that his former co-worker A.H. (Andrew) — who testified that defendant told him that "what happened between him and his stepdaughter was 'mutual,'" M.C.-A. I, (slip op. at 4) — was an "illegal immigrant" who used a false name. Defendant contended that he asked his trial attorney to confront Andrew about his immigration status, but his counsel did not.

3

Notably, defendant made these factual allegations in a "verified petition" that was not properly verified. Rather, he stated only that his allegations were "true to the best of [his] knowledge and belief."

In his counseled brief, defendant amplified these points under the rubric that "counsel failed to conduct [an] investigation, failed to consult an expert witness and failed to properly present the defense." He also contended that counsel did not vigorously cross-examine defendant's wife L.C. (Lucy) to elicit evidence supporting his claim that she worked as a go-go dancer, and she had an affair with Andrew, the co-worker who testified against him.

Defendant also argued in his counseled brief that trial counsel was ineffective by failing to object to testimony from the State's Child Sexual Abuse Accommodation Syndrome (CSAAS) expert (which we summarized in M.C.-A. I, (slip op. at 12)). In State v. J.L.G., 234 N.J. 265 (2018), the Court held "expert testimony about CSAAS in general, and its component behaviors other than delayed disclosure, may no longer be admitted at criminal trials. Evidence about delayed disclosure can be presented if it satisfies all parts" of N.J.R.E. 702. "In particular, the State must show that the evidence is beyond the understanding of the average juror," which will be a case-by-case, fact-sensitive determination.

Ibid. At oral argument, PCR counsel contended that the Supreme Court's holding in J.L.G. should apply to defendant's case.

The PCR court denied the petition in a written decision that focused on the CSAAS issue. The court noted we rejected defendant's claim on direct appeal that the decision to permit the CSAAS testimony was plain error. Assuming for argument's sake that J.L.G. applied to defendant's case (although defendant's appeal was no longer pending when J.L.G. was decided), the PCR court held it did not warrant PCR, because Edith's testimony was not the "lynchpin" of the State's case. In so holding, the PCR court referred to a factor in our plain error analysis in G.E.P., after we held that J.L.G. applied to the pipeline cases. See State v. G.E.P., 458 N.J. Super. 436, 454 (App. Div. 2019) (holding in G.E.P. that admitting CSAAS testimony was plain error because the alleged victim's testimony was the "lynchpin" of the State's case).[2] However, the Supreme Court held that the other evidence of guilt supported affirming G.E.P.'s conviction. G.E.P., 243 N.J. at 390-93. In any event, the PCR court noted the victim's testimony here was not the "lynchpin" of the prosecution,

---

[2] In G.E.P., we consolidated the appeals of four different defendants, including G.E.P. We reversed the convictions of all four defendants. G.E.P., 458 N.J. Super. at 443. The Supreme Court affirmed as to all but G.E.P. State v. G.E.P., 243 N.J. 362, 393 (2020).

because Edith's sister K.C. (Kelly), her mother Lucy, and defendant's co-worker provided "significant corroborating evidence" of defendant's guilt; and, the deleted pictures retrieved from the camera located in defendant's truck depicted sex acts occurring between defendant and the victim.

The PCR court also briefly addressed defendant's claims that trial counsel failed to investigate a defense, which we discuss at greater length below. The court found that even if the co-worker testified falsely, "the result of the proceedings would not have been different" because of "the strength of the evidence supporting [defendant's] guilt." With little elaboration, the PCR court also rejected defendant's claim that trial counsel was ineffective by failing to retain an expert witness to investigate the "email/Facebook Instant Message."

In his appeal, defendant reasserts the claims he presented to the PCR court, and he asserts two new ones:

> POINT I
>
> BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR PCR.
>
> A. Legal Standards Governing Applications For Post-Conviction Relief.
>
> B. Trial Counsel Failed to Object to the CSAAS Witness' Testimony and Failed to Object to the

6

Reliability of the Social Science Supporting Her Explanation.

C. Trial Counsel failed to Object to the Trial Judge Applying the Wrong Standard in Deciding the Admissibility of Sexual History under the Rape Shield Law.

D. Trial Counsel was Ineffective When He Failed to Move For Separate Trials of Counts one and Three from the Rest of the Counts.

E. Trial Counsel Failed to Conduct Investigation, Failed to Consult an Expert Witness and Failed to Properly Present the Defense.

POINT II

BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING.

A. Legal Standards Governing Post-Conviction Relief Evidentiary Hearings.

B. Petitioner is Entitled to an Evidentiary Hearing.

Defendant also filed a pro se brief, advancing one claim:

POINT I

PETITIONER SHOULD BE GIVEN THE RETROACTIVE EFFECT OF State v. J.L.G. and State v. G.E.P. AS HIS CASE WAS PENDING [ON] DIRECT APPEAL WHILE J.L.G. WAS PENDING REVIEW.

When a PCR court does not hold an evidentiary hearing, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). To obtain an evidentiary hearing on a PCR petition, a defendant must establish a prima facie case for relief, demonstrate there exist material issues of disputed fact, and show that an evidentiary hearing is necessary to resolve the claims. R. 3:22-10(b). We review an order declining to hold an evidentiary hearing for an abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

As defendant rests all his claims for relief on his trial counsel's alleged ineffective assistance, we review his claims under the familiar two-pronged standard in Strickland v. Washington, 466 U.S. 668 (1984), which our Court adopted in State v. Fritz, 105 N.J. 42 (1987). To prevail on an ineffective-assistance-of-counsel claim, a defendant must establish: (l) his counsel performed deficiently and made errors so egregious he was not functioning effectively as the Sixth Amendment guarantees; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

I.

We first dispatch the CSAAS issue, which defendant raises in his counseled and pro se briefs. There is no merit to defendant's contention that his trial counsel, during a trial in 2014, was ineffective by failing to mount a challenge to the admissibility of CSAAS testimony, which at that point had been well-established. See Bullock v. Carver, 297 F.3d 1036, 1052-53 (10th Cir. 2002) (rejecting ineffective assistance claim "where a defendant 'faults his former counsel not for failing to find existing law, but for failing to predict future law'" (quoting United States v. Gonzalez-Lerma, 71 F.3d 1537, 1542 (10th Cir. 1995) (overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)))).

Nonetheless, defendant contends that J.L.G.'s restriction on using CSAAS testimony should apply to his petition.[3] Defendant misconceives pipeline retroactivity. Under that limited form of retroactivity, a new rule of law applies to new cases, retroactively to the case in which the rule is announced, and any cases pending on direct appeal when the rule is announced. G.E.P., 243 N.J. at

---

[3] Defendant does not identify the basis for presenting this ground for relief, other than ineffective assistance of counsel, but we may assume for the sake of argument that the contention is raised under Rule 3:22-4(a)(1), permitting a defendant to raise a "ground for relief not previously asserted [that] could not reasonably have been raised in any prior proceeding."

9

386.  But, J.L.G. established the new rule pertaining to CSAAS testimony on July 31, 2018.  By that time, defendant's direct appeal was no longer pending. We decided M.C.-A. I on August 8, 2017 and the Supreme Court denied certification on February 2, 2018.  232 N.J. 104.  Defendant could get the benefit of J.L.G. only if the Court granted it "complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted," State v. Burstein, 85 N.J. 394, 403 (1981).  That, the Court did not do.

Defendant also argues in his pro se brief that his appellate counsel was ineffective by failing to move to stay consideration of his petition for certification in his direct appeal until the Supreme Court decided J.L.G., which would have assured that it remained in the "pipeline."

We first note defendant did not raise this claim before the PCR court.  See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (recognizing that appellate courts will decline to address issues not brought to the attention of the trial court, unless they pertain to the court's jurisdiction or an issue of substantial public importance); State v. Arthur, 184 N.J. 307, 327 (2005) (applying Nieder to PCR appeal).  Although we are not obliged to address the claim, we do so to fully address defendant's CSAAS arguments.

Defendant's appeal was submitted on February 7, 2017, and decided six months later. While his appeal was pending decision, the Supreme Court granted certification in J.L.G. on March 17, 2017, and remanded for an evidentiary hearing on CSAAS's scientific reliability. State v. J.L.G., 229 N.J. 606 (2017). An attentive and forward-looking attorney may well have recognized the possibility of a change in the law and requested a stay of decision.[4]

But, it is uncertain that it was constitutionally deficient not to request a stay. "The Strickland/Fritz standard may not require appellate counsel to have the foresight to raise a cutting-edge issue or anticipate a change in the law not evident in existing jurisprudence." State v. O'Neil, 219 N.J. 598, 616 (2014); see also Moore v. Mitchell, 708 F.3d 760, 793 (6th Cir. 2013) (stating "[a]ppellate counsel must be competent, not clairvoyant"). On the other hand, one might argue the Supreme Court's remand in J.L.G. should have signaled such a possible change in the law. See Lucas v. O'Dea, 179 F.3d 412, 420 (6th Cir. 1999) (stating that "counsel's failure to raise an issue whose resolution is

---

[4] For example, on July 21, 2017, we granted a motion from G.E.P.'s counsel to stay appellate proceedings in his appeal pending decision in J.L.G. G.E.P.'s appeal had already been submitted for decision on May 2, 2017. Thus, G.E.P. was assured the benefit of pipeline retroactivity, although, as we have noted, it did not result in reversal.

clearly foreshadowed by existing decisions might constitute ineffective assistance").

Ultimately, it is unnecessary to decide whether appellate counsel was deficient by not requesting a stay. Even if we sua sponte stayed the direct appeal to await decision in J.L.G. (or if the Supreme Court granted a motion to stay decision on defendant's petition for certification) thereby assuring that the J.L.G. rule applied to defendant's case, there is not a reasonable probability that the result of defendant's direct appeal would have been different. We acknowledge that if we applied the J.L.G. rule, we would hold that the CSAAS testimony in defendant's case was erroneously admitted. That is because Edith's explanation that she was "scared" to tell anyone about the abuse would not have been admissible to prove a fact beyond the ken of the average juror. See N.J.R.E. 702. But, for the reasons we stated on direct appeal, the CSAAS testimony had little, if any, impact on the jury's verdict. See M.C.-A. I, (slip op. at 13-14). We remain "convinced" that the expert's "brief summary of the CSAAS did not affect the outcome of this case in light of the substantial evidence of guilt and the minor role her testimony played in the trial." M.C.-A. I, (slip op. at 13).

In particular, Edith's testimony did not reflect any of the five CSAAS components. In fact, defendant's trial counsel highlighted in summation that the

expert testified that a child rarely discloses abuse all at once, but Edith did. Furthermore, Edith's testimony, which Kelly and Lucy partly corroborated, provided a clear narrative about the abuse she had suffered for many years. Both Edith and Lucy identified defendant as the man in the deleted pictures, which established powerful evidence of defendant's guilt. See J.L.G., 234 N.J. at 306-07 (erroneous admission of CSAAS evidence found to be harmless where State provided "powerful evidence of defendant's guilt," including iPhone recording of one instance of sexual abuse). The overwhelming strength of the State's evidence therefore clearly outweighed any conceivable prejudice defendant may have suffered. Therefore, defendant's petition failed to establish a reasonable probability that but for trial counsel's failure to object (and appellate counsel's failure to request a stay of decision on direct appeal), the results of the trial and direct appeal would have been different. Defendant therefore failed to satisfy his burden under Strickland's second prong. Strickland, 466 U.S. at 694.

## II.

Defendant next claims trial counsel was constitutionally ineffective by failing to adequately investigate issues defendant raised with him. "An ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352 (2013).

"A counsel's failure to do so will 'render the lawyer's performance deficient.'" Id. at 353 (quoting State v. Chew, 179 N.J. 186, 217 (2004)). "[W]hen a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Defendant asserts trial counsel should have questioned both his wife and his co-worker about their alleged relationship, to persuade the jury they shared a common interest in seeing defendant sent to prison. Defendant also asserts his counsel should have challenged the co-worker's credibility by cross-examining him about using a false name to conceal his immigration status. Lastly, defendant asserts trial counsel was ineffective by failing to hire an expert witness to retrieve Edith's alleged recantation in an "email/Facebook Instant Message," and by failing to cross-examine Edith about the alleged recantation.

These are the types of "bald assertion[s]" that are insufficient to warrant PCR. See ibid. Defendant provides no proof that Andrew lied about his name; moreover, defendant's counsel vigorously attacked Andrew's credibility on cross-examination. For example, counsel established the incongruity of

Andrew's claims that he had known defendant for seventeen years, but did not know Lucy's name even though Lucy called Andrew after she learned of the allegations against defendant. Counsel also asked Andrew what his name was, and what name appeared on his driver's license.

Moreover, defendant's own testimony revealed that, although he claims to have not trusted Andrew, defendant still appeared to support him. Defendant stated (although Andrew denied it) that he loaned Andrew a few thousand dollars to support Andrew's goal of owning a truck. Defendant's counsel also attempted to question defendant about seeing Lucy and Andrew together while Lucy was dancing at a go-go bar, but the trial judge barred the questioning as irrelevant.

Regarding the allegedly recanting email or message from Edith, defendant provides no competent evidence the communication existed. Notably, in the "verified petition" of his counseled petition for PCR, defendant stated only that his allegations — including the one about the alleged recantation — were made "to the best of [his] knowledge and belief." However, "factual assertions based merely upon 'information and belief' are patently inadequate" under Rule 1:6-6. Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443, 454 (App. Div. 1998); see also Lippmann v. Hydro-Space Tech., Inc., 77 N.J. Super. 497, 504 (App. Div. 1962) (verification "to the best of the knowledge and belief of [the]

deponent" is defective). Furthermore, any factual assertion supporting a PCR petition "must be made by an affidavit or certification pursuant to Rule 1:4-4 and based on the personal knowledge of the declarant." R. 3:22-10(c); see also R. 1:4-4(a) and (b).

Also, defendant does not specify whether the message was an email or a Facebook Instant Message — two distinct forms of communication; when it was sent; over what device he viewed it; what prompted it (such as a request from defendant); when he deleted it; and when he advised counsel he had done so. He offers no certification from anyone with whom he shared the alleged communication, nor does he provide a certification from Edith admitting she sent the message. Although he claims defense counsel was ineffective by failing to retain an expert to retrieve the alleged communication, he provides no evidence that an expert could do so after whatever delay occurred between when defendant allegedly received and deleted it.

Even accepting defendant's claim concerning the alleged email, parsed closely, it falls short of a clear recantation. The first three sentences merely express reluctance to testify: "I'm sorry Daddy. I didn't want to do this to you. Mommy made me do this." They do not state Edith's accusations were false. Even the last sentence of the supposed communication — "Mommy didn't

16

believe me that it didn't happen" — is at best ambiguous. Defendant wants us to infer that Edith tried recanting to her mother, who did not believe her. But Edith did not say the abuse "didn't happen." Conceivably, she tried recanting (falsely) at defendant's behest, but her mother — who identified defendant's body in a photo depicting him sexually assaulting Edith — would not hear of it.

Finally, we are unconvinced that had trial counsel utilized the alleged communication at trial, there is a reasonable probability the verdict would have been different. "Courts generally regard recantation testimony as suspect and untrustworthy." State v. Carter, 69 N.J. 420, 427 (1976). Jurors likely do as well. Notwithstanding any attempt to recant, Edith stuck to her guns at trial. And her allegations were corroborated, in part, by Edith's sister and mother and the other powerful evidence of defendant's guilt.

### III.

Defendant raises two additional claims for the first time on appeal. Defendant contends trial counsel was ineffective for failing to move to sever the indictment into two separate trials based on counts alleging aggravated sexual assault over the age of thirteen, and under the age of thirteen. Defendant also asserts trial counsel failed to object to the trial court applying the wrong standard under the Rape Shield Law, N.J.S.A. 2C:14-7(a), in denying his request to

question Edith on her alleged sexual history with her then-boyfriend.  As defendant raised neither of these claims before the PCR court, we are not obliged to address them for the first time on appeal.  See Nieder, 62 N.J. at 234; Arthur, 184 N.J. at 327.

Nonetheless, for the sake of completeness, we will address each in turn.

A.

Defendant contends the trial court applied the wrong standard in deciding his motion for leave to ask Edith about her sexual history with her boyfriend, and trial counsel was ineffective for failing to object.  Before denying defendant's motion mid-trial, the court noted defendant was obligated to file a motion pre-trial to decide the issue.  Counsel conceded he had failed to do so.  Counsel also acknowledged his motion was not based on newly discovered information, the lone statutory exception allowing a mid-trial motion.  Nonetheless, the court addressed the motion, and denied it.

The court found defendant had "not met the standard . . . demonstrating why evidence of the victim's sexual history is relevant and highly material or that the probative value of such evidence substantially outweighs the risk of undue prejudice and the invasion of privacy of the victim."  The court found defendant's argument that Edith would have fabricated her claims against

defendant to prevent the family from moving to North Carolina because she had a sexual relationship with her boyfriend to "not [be] sufficiently probative to outweigh the presumption that the victim's privacy is protected." Defendant could instead argue Edith had a long-standing boyfriend that she did not want to leave behind.

Second, with respect to the argument that her boyfriend may have been the individual in the pictures, the court allowed counsel to ask Edith "whether her boyfriend took the pictures or whether the victim herself took the pictures . . . of her boyfriend or whether the boyfriend is the body in the pictures." However, counsel could not ask additional questions surrounding any sexual relationship Edith may have had with her boyfriend.

Defendant is correct that the trial judge applied a heightened standard that our Court has disavowed. In State v. Budis, 125 N.J. 519, 532 (1991), the Court held that, to avoid a clash with the Sixth Amendment's Confrontation Clause, a court must depart from N.J.S.A. 2C:14-7(a)'s literal language. Instead of determining whether the evidence is "relevant and highly material" and "the probative value of the evidence offered substantially outweigh its collateral nature," N.J.S.A. 2C:14-7(a), a court must consider whether "the evidence [is] relevant to the defense," and "whether its probative value outweighs its

19

prejudicial effect," Budis, 125 N.J. at 532; see also State v. J.A.C., 210 N.J. 281, 298-99 (2012) (same).

However, even under the applicable standard, defendant's request would have been denied. The court struck an appropriate balance between the proposed questioning's probative value and its prejudicial effect. Defendant was permitted to ask if the strength of Edith's relationship with her boyfriend made her want to stay in New Jersey. Delving further into her private life would not have yielded any additional probative evidence.

Defendant contends "[e]vidence of [Edith's] sexual history with her boyfriend would have allowed the jury to infer that the male who took and was depicted in the photos was [her boyfriend] and not [defendant]." However, the court's order allowed defendant to ask Edith whether her boyfriend was the male in the pictures, or the male taking the pictures. If she had answered in the affirmative, that would have established a sexual relationship between them. Defendant thus was permitted to establish the same fact through different means.

In sum, although trial counsel did not object when the trial court applied a heightened standard to defendant's motion, defendant suffered no prejudice.

B.

Lastly, we address defendant's claim that trial counsel was ineffective by failing to move to sever counts one and three from the remainder of the indictment. Counts one and three charged defendant with first degree-aggravated sexual assault and second-degree sexual assault when Edith was under the age of thirteen. Because the photos introduced at trial depicted sex acts between defendant and Edith after she turned thirteen, defendant asserts those pictures, which he contends were highly prejudicial, would not have been admitted at a separate trial on counts one and three.

Defendant would have faced a high burden to secure a severance. "More than a cavil allegation of prejudice must be offered to warrant an order for separate trials of properly joined offenses." State v. Reldan, 167 N.J. Super. 595, 598 (Law. Div. 1979), aff'd in part, rev'd in part on other grounds,185 N.J. Super. 494 (App. Div. 1982). "[I]f separate offenses were required to be tried separately in all circumstances, the multiplicity of trials would disserve the State and defendants alike." State v. Manney, 26 N.J. 362, 366 (1958). "Central to the inquiry is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges.'" State v. Chenique-Puey, 145 N.J. 334,

341 (1996) (alteration in original) (quoting State v. Pitts, 116 N.J. 580, 601-02 (1989)). "If the evidence would be admissible at both trials, then the trial court may consolidate the charges because 'a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" Ibid. (quoting State v. Coruzzi, 189 N.J. Super. 273, 299 (App. Div.), certif. denied, 94 N.J. 531 (1983)).

Therefore, the central inquiry concerns whether the pictures of Edith when she was over the age of thirteen would have been admissible at a trial of just counts one and three, charging defendant with crimes against Edith when she was under thirteen, as "other crimes" evidence pursuant to N.J.R.E. 404(b). We conclude they would have been admissible.

"N.J.R.E. 404(b) is a rule of exclusion." State v. Vargas, 463 N.J. Super. 598, 611 (App. Div.), certif. denied, 244 N.J. 302 (2020). "Because other-crimes evidence has a 'unique tendency' to prejudice a jury against the defendant, it must be admitted cautiously." State v. Gillispie, 208 N.J. 59, 85 (2011) (quoting State v. Reddish, 181 N.J. 553, 608 (2004)). To admit other crimes evidence, the proponent must satisfy the test established in State v. Cofield, 127 N.J. 328, 338 (1992):

> (1) It must be relevant to a material issue; (2) It must be similar in kind and reasonably close in time to the

offense charged; (3) The evidence of the other crime must be clear and convincing; and (4) The probative value of the evidence must not be outweighed by its apparent prejudice.

[State v. Covell, 157 N.J. 554, 564 (1999).]

The pictures would have been "relevant to a material issue" as they would have demonstrated that defendant had sexually assaulted Edith, albeit outside the time frame of counts one and three. The pictures also would have been "clear and convincing" evidence, as they depicted sex acts occurring between Edith and a male that both Edith and Lucy identified as defendant. And with respect to the second prong, "[t]he Supreme Court has made clear that the second-prong test should be limited to Cofield-type situations and need not be given 'universal application.'" Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 8b on N.J.R.E. 404(b) (2020) (quoting State v. Williams, 190 N.J. 114, 131 (2007)). "Cofield involved proof that the defendant constructively possessed certain drugs, because he possessed similar drugs shortly after the event subject to prosecution," Vargas, 463 N.J. Super. at 613, a fact pattern not replicated here.

Regarding prong four, we are unconvinced that the prejudice of introducing the photos would outweigh their probative value. "[T]he fourth Cofield prong is generally the most difficult to satisfy." Id. at 614. No

23

doubt, the photographs are prejudicial. But, they were significantly probative on several levels. The photographs would have filled an important gap in the chronology between the assaults when Edith was a pre-teen, and her ultimate disclosure when she was sixteen; the photographs demonstrated that the assaults were continuing. See State v. Garrison, 228 N.J. 182, 198 (2017) (stating that other crimes evidence in sexual assault case was material because it filled a gap in the chronology).

The photographs also would have revealed defendant's motive and intent to escalate Edith's abuse over many years, and his opportunity to assault Edith in the privacy of his truck and his home when Lucy was not around. Edith testified the abuse began when she was around nine years old. The abuse initially involved inappropriate touching all over her body, as well as oral sex. This continued for the next four years, until she turned thirteen, at which point defendant then forced Edith to have intercourse. The photographs of the abuse when she was thirteen and older would have supported Edith's testimony that the abuse began when she was younger and escalated over the coming years.

Presumably, at a trial of just counts one and three, defendant would have still contended his wife, his step-daughter, his co-worker and his own daughter had lied about his sexual abuse of Edith for their own motives. The photographs

— which were found on a camera in defendant's truck — would have been powerful probative evidence that the sexual abuse was real.

In sum, the prejudice of introducing the photographs in a severed trial would not have outweighed their probative value. Therefore, trial counsel's failure to request severance of the indictment did not render his performance constitutionally ineffective, as the motion would not have succeeded. And it is not ineffective assistance of counsel to withhold a meritless motion. State v. O'Neal, 190 N.J. 601, 619 (2007).

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION