SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Thomas J. DiNapoli (A-56-24) (090381)**

**Argued November 5, 2025 -- Decided May 12, 2026**

**JUSTICE NORIEGA, writing for a unanimous Court.**

In this appeal, the Court considers whether a defendant's proffered expert testimony on causation under N.J.S.A. 2C:2-3(c) is admissible in a vehicular homicide prosecution and whether an N.J.R.E. 104 hearing is required to make that determination.

In June 2019, defendant Thomas DiNapoli drove across double yellow lines and struck a vehicle traveling in the opposite direction whose front seat passenger, Michelina Mele, was ninety-four years old and suffering from dementia and Alzheimer's disease. Mele was transported to the hospital and found to have rib and patella fractures and lung contusions. Mele's family determined that palliative care was the appropriate response to her overall condition. She died the next day. Defendant, who had taken his prescribed medication, Clonazepam, beyond a normal therapeutic dosage before driving that day, was charged with vehicular homicide.

To challenge the State's contention that Mele's death was the result of defendant's reckless conduct, defendant proffered three experts who contend that Mele would have recovered from her injuries sustained in the crash, but that the palliative care administered in response to her pre-existing conditions ultimately caused her death. The State moved to bar that testimony.

The trial court denied the State's motion to preclude the testimony of the three defense experts, opting to address their qualifications at trial. On appeal, the Appellate Division vacated that order and remanded for an N.J.R.E. 104 hearing to determine the admissibility of the proposed expert testimony. The Court granted the State's motion for leave to appeal, limited to the issues noted. 260 N.J. 457 (2025).

**HELD:** Defendant's proffered expert testimony regarding the assessment of defendant's culpability for the victim's death, pursuant to prong one of N.J.S.A. 2C:2-3(c), is relevant in a vehicular homicide prosecution. An N.J.R.E. 104 hearing is not necessary to determine whether defendant's proposed experts may testify.

1

1. To determine relevancy in a criminal case, courts look to the elements the State must prove to establish the charged offenses. Vehicular homicide requires that the State prove: (1) that defendant was driving a vehicle; (2) that defendant caused the death; and (3) that the death was caused by driving a vehicle recklessly. The second and third elements, which relate to causation, are governed by N.J.S.A. 2C:2-3. Vehicular homicide requires that the State prove not only "but for" causation but also an additional causal element. (pp. 13-15)

2. N.J.S.A. 2C:2-3(c) presents two alternative showings to meet that additional causal requirement. Under prong one, the State may show causation by proving that "the actual result [is] within the risk of which the actor is aware." Alternatively, under prong two of the statute, the State may prove causation by demonstrating that the "actual result . . . involve[s] the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense." Both the first and the second prongs of N.J.S.A. 2C:2-3(c) depend on the link between the "actual result" -- i.e., the harm inflicted on the victim -- and the defendant's awareness of the risk of harm. Thus, under N.J.S.A. 2C:2-3(c), the jury must assess whether the actual result was within the risk that the defendant disregarded by acting recklessly. N.J.S.A. 2C:2-3 is derived from section 2.03 of the Model Penal Code, which the Court reviews. (pp. 15-19)

3. The State bears the primary responsibility to decide whether to charge a defendant, which statutes to charge under, and what theory of liability to pursue. Accordingly, under N.J.S.A. 2C:2-3(c), the State may elect which theory of culpability to pursue, including whether to proceed exclusively under one prong rather than the other, as the State did here. The State's election does not foreclose the defendant's right to assert a defense as to causation or to develop and present challenges to the State's theory, but it does affect what defenses might be relevant. In State v. Buckley, for example, the Court addressed whether the victim's failure to wear a seatbelt in a fatal accident was admissible evidence in the defendant's challenge to causation. 261 N.J. 249, 255 (2013). The defendant sought to show that the victim would have survived the fatal accident had he worn a seatbelt. Id. at 258. Analyzing the case under the State's asserted prong one theory, the Court found the victim's failure to wear a seatbelt irrelevant. Id. at 268. The Court based its conclusion on the actual result -- the victim's death in the automobile accident. Whether or not the victim had a greater likelihood of surviving with one variable changed did not affect that. See ibid. Because the State's theory of the case can affect the evidence a defendant may choose to present, fairness and efficiency require that the State disclose its chosen theory of causation at the earliest possible opportunity, but no later than the pretrial conference. (pp. 19-21)

4. Here, because the State has represented that it intends to proceed solely under prong one, the jury will have to determine whether Mele's death was within the risk of which defendant was aware. Whereas Buckley did not involve any dispute as to whether the defendant's conduct resulted in a fatal accident, defendant's experts here contend that Mele would have recovered from her injuries and that her death was caused by her family's decision to seek hospice care. Defendant's proffered evidence need not rebut "but for" causation to be admissible at trial on the issue of reckless causation under prong one of N.J.S.A. 2C:2-3(c). The defendant may also raise defenses to the additional elements of causation that the State must prove under N.J.S.A. 2C:2-3(c). If the jury credits the testimony of defendant's experts, it may reasonably infer that defendant's allegedly reckless driving did not give rise to a fatal motor vehicle accident at all and that the actual result -- Mele's death -- resulted from an intervening cause -- palliative care to ease her Alzheimer's symptoms -- rather than defendant's reckless driving, such that it cannot justify a conviction for vehicular homicide. The testimony of defendant's experts is thus relevant to the issue of causation under prong one of N.J.S.A. 2C:2-3(c). (pp. 22-25)

5. The State's argument that intervening causes can never be a defense to prong one, and that defendant's theory is irrelevant because it does not defeat "but for" causation, is unsupported by either the statutory text or the structure of the culpability analysis required under prong one. The defense is permitted to introduce evidence that challenges the causal chain advanced by the State under prong one, including evidence of an intervening cause. (pp. 25-26)

6. Defendant's proposed testimony is relevant to whether the manner of Mele's death diverged from the result that defendant risked through his recklessness. A court need not hold an N.J.R.E. 104 hearing to determine whether the experts' opinions are relevant. Any inconsistencies between the reports do not affect their admissibility. It is the jury's responsibility to evaluate the credibility of all of the evidence and resolve factual disputes. (pp. 26-27)

7. The Court now requires that the State disclose to defendants which prong it will be relying on at the earliest possible stage where the application of N.J.S.A. 2C:2-3(c) is warranted. The trial court ultimately decides whether to instruct the jury on prong one, prong two, or both, selecting instructions that best fit the applicable portion(s) of the statute. (pp.27-28)

     **REVERSED and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and HOFFMAN join in JUSTICE NORIEGA's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-56 September Term 2024
090381

State of New Jersey,

Plaintiff-Appellant,

v.

Thomas J. DiNapoli,

Defendant-Respondent.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 5, 2025 | May 12, 2026 |

James C. Brady, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; James C. Brady, of counsel and on the briefs).

Eric W. Feinberg argued the cause for respondent (Caruso Smith Picini, attorneys; Timothy R. Smith, of counsel, and Eric W. Feinberg, Steven J. Kaflowitz, and Zinovia H. Stone, on the briefs).

Brian Uzdavinis, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Brian Uzdavinis, of counsel and on the brief).

Rachel A. Neckes, Assistant Deputy Public Defender, argued the cause for amicus curiae Public Defender of

1

New Jersey (Jennifer N. Sellitti, Public Defender,
attorney; Rachel A. Neckes, of counsel and on the brief).

Marc M. Yenicag submitted a brief on behalf of amicus
curiae Association of Criminal Defense Lawyers of New
Jersey (Pashman Stein Walder Hayden, attorneys; Marc
M. Yenicag, on the brief).

JUSTICE NORIEGA delivered the opinion of the Court.

On the afternoon of June 4, 2019, defendant Thomas DiNapoli was driving a vehicle in Union Township, when he drove across the street's double yellow lines and struck a Chevrolet traveling in the opposite direction. The front seat passenger of the Chevrolet, Michelina Mele, was ninety-four years old and suffering from dementia and Alzheimer's disease. Mele was transported to the hospital due to her injuries. While at the hospital, Mele's family determined that palliative care was the appropriate response to her overall condition. She died the next day. DiNapoli, who admitted taking his prescribed medication, Clonazepam, before driving that day, was treated and released from the hospital the same day. DiNapoli was charged with vehicular homicide in connection with Mele's death.

To challenge the State's contention that Mele's death was the result of defendant's reckless conduct, defendant proffered three experts who contend that Mele would have recovered from her injuries sustained in the crash, but

2

that the palliative care administered in response to her pre-existing conditions -- namely dementia and Alzheimer's disease -- ultimately caused her death. The State moved to bar that testimony.

The trial court denied the State's motion to preclude the testimony of the three defense experts, opting to address their qualifications at trial. On appeal, the Appellate Division vacated that order and remanded for an N.J.R.E. 104 hearing to determine the admissibility of the proposed expert testimony.

We now reverse the judgment of the Appellate Division and hold, as the trial court did, that defendant's proffered expert testimony regarding the assessment of defendant's culpability for the victim's death, pursuant to prong one of N.J.S.A. 2C:2-3(c), is relevant in a vehicular homicide prosecution. Although the State has the discretion to choose its theory of causation in a vehicular homicide prosecution, that choice does not foreclose a defendant's right to present a contrary theory of causation that undercuts their culpability pursuant to prong one of N.J.S.A. 2C:2-3(c). We further hold that the State must make its election under subsection (c) known to the defendant at the earliest possible opportunity, but in any event, no later than the pretrial conference.

I.

A.

Defendant was driving his Mazda on Morris Avenue in Union Township on the afternoon of June 4, 2019, when his car drifted across the double yellow lines into oncoming traffic and crashed, head-on, into a vehicle occupied by three people including Mele, who was the front-seat passenger.

Defendant provided police with conflicting versions of what caused the accident. He first told police that he fell asleep at the wheel. Later, he claimed that he lost control of the vehicle. Four hours after the accident, defendant's blood was analyzed and revealed the presence of Clonazepam in an amount exceeding a normal therapeutic dosage, as well as a metabolite of cocaine.

After the crash, Mele was transported to the hospital, where she was found to have rib and patella fractures and lung contusions. She was described as breathing normally with clear airways, though she complained of severe chest pain and was disoriented. Due to "sundowning"[1] from her dementia, Mele did not tolerate a non-rebreather mask and was placed on high-flow

---

[1] "Sundowning" is a state of increased confusion, anxiety, and agitation that is common in dementia or Alzheimer's patients.

oxygen. She was admitted to the Critical Care Unit and listed as being in critical condition. Her son was at her bedside.

Just after midnight, Dr. Pedro Cordero, M.D., noted that Mele had active DNR (Do Not Resuscitate) and DNI (Do Not Intubate) orders, meaning that she had previously decided not to undergo resuscitation or intubation if her condition worsened. At that time, Dr. Cordero observed that Mele showed "no increased work of breathing, no accessory muscle use, [and] bilateral breath sounds," indicating she was not in respiratory distress. The following morning, an Orthopedic Physician Assistant (PA) discussed the case with Mele's son and decided to place a hold on any surgical intervention, documenting that the patient "may continue with palliative care."

At 11:00 a.m., Dr. Sabeen Khan, M.D., examined Mele and found "no acute respiratory distress on high flow oxygen." Dr. Khan noted that the "[f]amily wants palliative care," with Mele's son requesting inpatient hospice. Orders were then entered for "25 mcg fentanyl patch and continue [orally administered] Morphine alternating with IV as needed."

At noon, Dr. Carlos Remolina, M.D., consulted with the family and agreed with their request for hospice care. Dr. Remolina's impression was that hospice was "the best approach for this poor lady who is in a lot of pain and her pain should be controlled with Morphine. Most likely the patient should

5

be made as comfortable as possible [because] even if the patient got better she still would have dementia and Alzheimer's disease which is making her nonfunctioning." Mele was switched to morphine infusion and comfort care, following discussions with her family. Despite efforts to discharge Mele from the hospital and transfer her to hospice care, she died later that day.

The autopsy performed by Dr. Beverly Leffers, M.D., revealed blunt impact injuries, including contusions, abrasions, and rib and sternal fractures, and listed the cause of death as "blunt impact injuries" and the manner of death as "accident."

A grand jury returned an indictment on January 8, 2020, charging defendant with one count of second-degree vehicular homicide, N.J.S.A. 2C:11-5(a), and two counts of fourth-degree assault by auto.[2] Subsequently, a grand jury issued a superseding indictment, charging defendant with the initial three charges plus third-degree strict liability vehicular homicide and third-degree witness tampering.

Before trial, defendant submitted two expert reports from Drs. Marc Polimeni, M.D., an internist, and Robert J. Pandina, Ph.D., a psychologist. The State moved to preclude the experts. The trial court denied the motion as

---

[2]  These two counts pertain to the surviving passengers in the vehicle and are thus not material to our analysis.

6

to Dr. Pandina, but reserved its decision as to Dr. Polimeni pending an N.J.R.E. 104 hearing.

During trial, Dr. Khan testified that "do not resuscitate" and "do not intubate" instructions were put in place after she spoke with Mele's son at the patient's bedside. Dr. Khan also testified that it was her opinion that the trauma from the crash caused Mele's death, stating that but for the accident, she would "probably not" have died the next day because "[p]eople live with Alzheimer's." Dr. Leffers testified consistent with her autopsy report that Mele's cause of death was "blunt impact injuries" and that the manner of death was "accident."

For reasons not relevant to this appeal, the first trial ended in a mistrial during the State's presentation of its case-in-chief. After the mistrial, defendant submitted three expert reports challenging the cause of death; defendant included the same expert reports from the trial, and added a report from Dr. Henry Velez, M.D., a board-certified internist and pulmonologist. In a pretrial motion central to this appeal, the State challenged the admissibility of Drs. Polimeni, Velez, and Pandina.

Dr. Polimeni opined that none of Mele's injuries were life-threatening and that she died from being placed on palliative care for her Alzheimer's disease, not from accident-related trauma. Dr. Polimeni stated that Mele was

"treated appropriately for [hospice], but that her need for said care was not directly or proximately caused by the subject motor vehicle accident."

Dr. Velez agreed, noting that Mele's vital signs remained stable until opioid dosages were raised as part of Mele's hospice care. The expert opined that respiratory depression, not Mele's injuries from the accident, caused her death. Dr. Velez also pointed to Dr. Leffers' autopsy report in which he noted that there was "no evidence of trauma either to the heart or to the lungs." Dr. Velez concluded that "the motor vehicle accident was not the proximate cause of her death."

Dr. Pandina focused on the physiological effect of the medication, concluding that Mele's "functionality, particularly pulmonary, cardiological[,] and central nervous system functioning were significantly compromised because of the actions of narcotic medications administered to her during her treatment at [the] hospital on June 4 and 5, 2019." Dr. Pandina also highlighted concerns regarding DNR documentation, which he noted was not produced to the hospital, suggesting it was unclear why the hospital staff placed her on DNR status without it.

The trial court denied the State's motion to preclude the testimony of Drs. Pandina, Polimeni, and Velez, as well as the State's request to have an N.J.R.E. 104 hearing prior to the trial to determine the admissibility of the

8

testimony.  The Appellate Division granted the State's motion for leave to appeal the trial court order.

B.

The Appellate Division vacated the trial court's order and remanded the matter for a hearing pursuant to N.J.R.E. 104.  The court acknowledged that each of the three experts offered evidence that could potentially support the finding of an intervening cause breaking the chain of causation.  However, the Appellate Division found the expert reports to be so varied and inconsistent that it could not determine, based on the reports alone, whether they sufficiently established the existence of an intervening cause.  The court concluded that an N.J.R.E. 104 hearing was necessary to allow the trial court to assess the relevance and admissibility of each expert's testimony.

This Court granted the State's motion for leave to appeal, limited to the issues of whether defendant's proffered expert testimony on causation under N.J.S.A. 2C:2-3(c) is admissible in a vehicular homicide prosecution and whether an N.J.R.E. 104 hearing is required to make that determination.  260 N.J. 457 (2025).  We also granted leave to appear as amici curiae to the Attorney General, the Public Defender, and the Association of Criminal Defense Lawyers.

9

## II.

### A.

The State claims exclusive authority to select the causation theory under N.J.S.A. 2C:2-3(c) and has elected to proceed solely under prong one of that statute. It argues that defendant's expert testimony is only admissible it if directly challenges "but for" causation under N.J.S.A. 2C:2-3(a)(1) and whether "the victim's death was within the risk of which the defendant was aware" under prong one of N.J.S.A. 2C:2-3(c). Because the defense experts do not dispute "but for" causation and instead seek to introduce an intervening cause -- an argument the State asserts is only relevant under prong two -- their testimony should be excluded. Even if prong two were at issue, the State contends the experts' opinions would still be inadmissible because they do not allege gross malpractice or any intervening medical error, but merely challenge the victim's and her family's decision to pursue palliative care.

Amicus the Attorney General of New Jersey adds that New Jersey law recognizes a person's right to make self-determinative medical decisions, and such decisions do not constitute intervening causes that lessen criminal liability, absent gross malpractice. The Attorney General further distinguishes palliative care and hospice care from euthanasia and asserts that criminal

10

defendants cannot risk another's life and then second-guess the victim's or family's medical choices.[3]

B.

Defendant contends that his right to present a complete defense includes introducing expert testimony challenging the State's causation theory. Defendant argues his experts show that Mele's death was caused by a lethal dosage of morphine administered as part of palliative care for her advanced dementia and Alzheimer's, not by accident-related injuries. Thus, defendant maintains the actual result was not a traffic fatality, but death following palliative care for pre-existing conditions.

Amicus Office of the Public Defender (OPD) supports admitting the defense experts under prong one, arguing their testimony shows Mele's death from Alzheimer's was the "actual result" -- a fundamentally different outcome than the risk posed by reckless driving. OPD cautions that the State's

---

[3] Throughout his briefing to this Court and during oral argument, defendant referred to Mele's family's request for, and implementation of, palliative care as "euthanasia." The record makes clear that Mele was not "euthanized." Defendant's consistent use of the term "euthanasia" suggests the legal conclusion that Mele's family is wrongfully at fault for her death, which is not at issue in this matter. Defendant does not have to prove Mele's family's culpability to sever the causal chain for his own liability, and such inflammatory language adds unnecessary ire to an already contentious matter. It is not proper -- nor necessary to resolve the question before us -- to cast doubt on the appropriateness or legality of end-of-life care decisions.

11

approach would nullify prong one of the statute by making any reckless act with but-for causation sufficient for liability, regardless of how remote the death is from the defendant's conduct. OPD also advocates for a formal requirement that the State disclose its chosen causation theory before trial and contends that any inconsistencies among defense experts should be addressed at trial, not through an N.J.R.E. 104 hearing.

## III.

## A.

We review "[a] trial court's ruling on the admissibility of evidence" with "'limited appellate scrutiny.'" State v. Buckley, 216 N.J. 249, 260 (2013) (quoting State v. Buda, 195 N.J. 278, 294 (2008)). Nevertheless, "[a] trial court's 'interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Ibid. (quoting State v. Handy, 206 N.J. 39, 45 (2011)). Accordingly, "[t]o the extent that the trial court's ruling constitute[s] an interpretation of N.J.S.A. 2C:2-3(c)," this Court's review is de novo. Id. at 261.

## B.

The criminal justice system, as a fundamentally adversarial forum, encourages the full participation of both the State and the defendant. "Under both the Federal and the New Jersey Constitutions, criminal defendants . . .

12

have the right to 'a meaningful opportunity to present a complete defense.'" State v. Chambers, 252 N.J. 561, 582 (2023) (quoting State v. Budis, 125 N.J. 519, 531 (1991)). This principle ensures that the jury, as the ultimate factfinder, is provided with all relevant information and competing claims before rendering its decision.

Under New Jersey law, "[e]vidence is relevant if it has 'a tendency in reason to prove or disprove any fact of consequence to the determination of the action.'" Id. at 591 (quoting N.J.R.E. 401). Relevance is evaluated in terms of both "probative value and materiality." Buckley, 216 N.J. at 261. Probative value refers to the "'tendency of the evidence to establish the proposition that it is offered to prove,'" while "'[a] material fact is one which is really in issue in the case.'" Ibid. (first quoting State v. Wilson, 135 N.J. 4, 13 (1994); and then quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)). citations and internal quotation marks omitted). To satisfy the relevancy threshold, evidence "need only have some tendency to prove a material fact." Ibid. (quoting State v. Coruzzi, 189 N.J. Super. 273, 302 (App. Div. 1983)). To determine relevancy in a criminal case, we look to the elements the State must prove to establish the charged offenses. See, e.g., State v. Bowens, 108 N.J. 622, 633 (1987) (noting that defensive evidence was relevant because it

13

"bears on the essential elements of a Code offense"), abrogated in other part by State v. Tate, 216 N.J. 300 (2013).

Vehicular homicide under N.J.S.A. 2C:11-5 requires that the State prove beyond a reasonable doubt: "(1) that 'defendant was driving a vehicle'; (2) that 'defendant caused the death'; and (3) that the death was caused by driving a vehicle recklessly." Buckley, 216 N.J. at 262 (quoting State v. Eldridge, 388 N.J. Super. 485, 494 (App. Div. 2006)). The second and third elements of the offense, which relate to causation, are governed by N.J.S.A. 2C:2-3. See State v. Lodzinski, 246 N.J. 331, 378 n.11 (2021) (Patterson, J., concurring) ("N.J.S.A. 2C:2-3(c) prescribes the standard of causation for offenses requiring 'that the defendant recklessly or criminally negligently cause a particular result.'"). Under that statute, the State must establish "but for" causation: that the defendant's conduct was "an antecedent but for which the result in question would not have occurred." N.J.S.A. 2C:2-3(a)(1). For many criminal statutes, "but for" causation is alone sufficient to establish criminal liability. For example, in a simple assault, if a defendant punches another person and causes injury, the punch is a "but for" cause of the injury, and the State need not prove anything further. See N.J.S.A. 2C:12-1(a)(1). Similarly, for criminal mischief, if a defendant breaks a window, that act is the "but for"

14

cause of the property damage, and no further causation analysis is required. See N.J.S.A. 2C:17-3(a)(1).

For other offenses, however, the State must also prove that "[t]he relationship between the conduct and result satisfies any additional causal requirements imposed by the [C]ode or by the law defining the offense." N.J.S.A. 2C:2-3(a)(2). Such is the case for vehicular homicide, which requires that the State prove an additional causal element as well as "but for" causation. See State v. Pelham, 176 N.J. 448, 460 (2003) (explaining that when a statute requires a mens rea of recklessness, the jury must make a "culpability assessment" under N.J.S.A. 2C:2-3(c)).

When the charged "offense requires that the defendant recklessly . . . cause a particular result," N.J.S.A. 2C:2-3(c) presents two alternative showings through which the State can demonstrate that the "additional causal requirement" has been met. Either prong, if satisfied, is sufficient to prove causation. See State v. Parkhill, 461 N.J. Super. 494, 503-05 (App. Div. 2019). The statute reads as follows:

> When the offense requires that the defendant recklessly . . . cause a particular result, the actual result must be within the risk of which the actor is aware . . . or, if not, the actual result must involve the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.

15

[N.J.S.A. 2C:2-3(c).]

First, the State may show causation under subsection (c) by proving that "the actual result [is] within the risk of which the actor is aware." N.J.S.A. 2C:2-3(c); accord Buckley, 261 N.J. at 264. In Buckley, the Court analyzed prong one in the context of a motor vehicle fatality, holding that the jury must "assess whether the defendant was aware that his allegedly reckless driving gave rise to a risk of a fatal motor vehicle accident." 261 N.J. at 264.

The alternative, second prong of subsection (c) serves as a safeguard for cases where the actual result is not exactly what the defendant risked but is still similar in kind. Under that second prong, the State may prove causation by demonstrating that the "actual result . . . involve[s] the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense." N.J.S.A. 2C:2-3(c). As the drafters of the Code noted, the second prong of subsection (c) of N.J.S.A. 2C:2-3 "deal[s] explicitly with variations between the actual result" and the result risked, and "stat[es] when the variation is not material." Buckley, 216 N.J. at 263-64 (alterations in original) (quoting Crim. L. Revision Comm'n, 2 N.J. Penal Code: Final Report, commentary to § 2C:2-3, at 50 (1971)). It requires the jury to "determine whether intervening causes or unforeseen

16

conditions lead to the conclusion that it is unjust to find that the defendant's conduct is the cause of the actual result." Pelham, 176 N.J. at 461 (quoting State v. Martin, 119 N.J. 2, 13 (1990)).

Both the first and the second prongs of subsection (c) depend on the link between the "actual result" -- i.e., "the harm inflicted on the victim," Buckley, 216 N.J. at 264 -- and the defendant's awareness of the risk of harm. Thus, under N.J.S.A. 2C:2-3(c), the jury's evaluation goes beyond simply asking whether the defendant's conduct was a factual or "but for" cause of the result -- conduct absent which the result would not have occurred -- to assess whether the actual result was within the risk that the defendant disregarded by acting recklessly. This is not simply a question of direct cause and effect, but a question of whether the manner and character of the result matched the type of harm the defendant's conduct made likely.

N.J.S.A. 2C:2-3 is derived from section 2.03 of the Model Penal Code (MPC), which sought to replace the traditional, often confusing, concepts of "proximate cause" with a more precise and culpability-focused approach to causation in criminal law. Section 2.03 of the MPC is nearly identical to N.J.S.A. 2C:2-3, and its subsections 2.03(3)(a) and (b) closely parallel the language and structure of N.J.S.A. 2C:2-3(c):

> (3) When recklessly or negligently causing a particular result is an element of an offense, the element is not

17

established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

> (a) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or extensive than that caused; or

> (b) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a [just] bearing on the actor's liability or on the gravity of his offense.

[MPC § 2.03 (Am. Law Inst. 1962) (alteration in original).]

The MPC drafters, concerned with the limitations of traditional proximate cause analysis, focused instead on "the propriety of allowing the result to influence the criminality of the defendant or the gravity of [the] crime." MPC § 2.03 cmt. 2. Thus, "[t]he question is . . . essentially one of culpability, and in Subsections (2) and (3) that question is posed in terms appropriate for submission to the jury." Ibid. The MPC's subsection (3) -- and by extension N.J.S.A. 2C:2-3(c) -- ensures a causal link between the criminal act and the defendant's culpability in a way that reliance on "but for" causation alone cannot sustain.

The MPC provides several hypotheticals to illustrate this approach. For example, if a defendant attempts to shoot his wife, and as a result she retreats

18

to her parents' home and dies from falling off a horse, the defendant is a "but for" cause of her encounter with the horse, but "no one would think that he should be held guilty of murder." Id. at cmt. 2. "Both courts and juries would regard the actual result as 'too remote or accidental in its occurrence'" to have a significant bearing on liability. Id. at cmt. 3. According to the MPC comments, although the defendant was certainly "a ['but for'] cause of [the wife's] encounter with the horse," that alone would not justify a murder conviction. Id. at cmt. 2.

In another MPC example, if the defendant shoots his wife and, while hospitalized, she contracts a disease unrelated to the gunshot and dies, the comments note that although the disease "may have been rendered substantially more probable by the defendant's conduct, a jury might still regard it as too unusual a result to justify a murder conviction." Id. at cmt. 3.

IV.

A.

We begin our analysis by considering whether the State is permitted to pursue a prosecution solely under a theory of prong one culpability under N.J.S.A. 2C:2-3(c).

The State bears the primary responsibility to decide whether to charge a defendant, which statutes to charge under, and what theory of liability to

19

pursue.  See State v. Medina, 349 N.J. Super. 108, 124 (App. Div. 2002) (discussing State v. States, 44 N.J. 285, 292 (1965), which recognized the State's discretion regarding which charge to prosecute when faced with overlapping criminal statutes).  The State is afforded flexibility in selecting among competing theories of culpability, often for strategic reasons.  See ibid.; see also United States v. Batchelder, 442 U.S. 114, 123-24 (1979).

However, this authority is not without its limits.  The Legislature defines criminal offenses, see State v. Johnson, 206 N.J. Super. 341, 343 (App. Div. 1985), grand juries screen charges, see N.J.S.A. 2B:21-1 to -10; 2B:22-1 to -9, the courts enforce legal sufficiency and fairness, see State v. Fuqua, 234 N.J. 583, 598 (2018), and the Constitution ultimately safeguards the rights of the accused, see N.J. Const. art. I, ¶ 10.

Accordingly, under N.J.S.A. 2C:2-3(c), the State may elect which theory of culpability to pursue, including whether to proceed exclusively under one prong rather than the other, as the State did here.  See Buckley, 216 N.J. at 266.  The State's election does not foreclose the defendant's right to assert a defense as to causation or to develop and present challenges to the State's theory, but it does affect what defenses might be relevant:  "the jury may consider only that which the law permits it to consider."  Id. at 263 (quoting Pelham, 176 N.J. at 466).

20

In Buckley, for example, the Court addressed whether the victim's failure to wear a seatbelt in a fatal accident was admissible evidence in the defendant's challenge to causation. Id. at 255. The parties did not dispute the victim's manner of death; rather, the defendant sought to show that the victim would have survived the fatal accident had he worn a seatbelt prior to the collision. Id. at 258. Analyzing the case under the State's asserted prong one theory, the Court found the victim's failure to wear a seatbelt irrelevant to the jury's inquiry under prong one of N.J.S.A. 2C:2-3(c). Id. at 268. The Court based its conclusion on the actual result -- the victim's death in the automobile accident. Ibid. Evidence regarding the "degree of [the risk of a fatal accident], or the variables that could affect its magnitude" was irrelevant because the collision was fatal. Ibid. Whether or not the victim had a greater likelihood of surviving with one variable changed did not affect that. See ibid.

Thus, the State has the discretion to choose which theory of causation to pursue in its prosecution of a case. However, because the State's theory of the case can affect the evidence a defendant may choose to present, fairness and efficiency require that the State disclose its chosen theory of causation at the earliest possible pretrial opportunity, but no later than the pretrial conference.

21

B.

Having determined that the State may elect which prong to pursue, we next assess whether defendant's theory is relevant to a prong one prosecution under the facts of this case.

Again, N.J.S.A. 2C:2-3(c) provides two alternative theories: (1) "the actual result" is "within the risk of which the actor is aware" (prong one); or (2) "the actual result" is not "within the risk of which the actor is aware" but "involve[s] the same kind of injury or harm as the probable result" and is not too remote (prong two). Because the State has represented that it intends to proceed solely under prong one, the jury will have to determine whether Mele's death was "within the risk of which" defendant was "aware." See Buckley, 216 N.J. at 265.

Here, defendant argues that it was not the accident that caused Mele's death, but rather her family's decision to seek hospice care. Whereas Buckley did not involve any dispute as to whether the defendant's conduct resulted in a fatal automobile accident, defendant's experts in this case do dispute whether defendant's conduct resulted in a fatal automobile accident. Under their theory -- if believed by a jury -- Mele would have recovered from the injuries she sustained in the car accident and her death was caused by her family's decision to seek hospice care, not by the automobile accident, which would fall outside

22

the risk of which defendant was aware.  Defendant submits that the reports of Drs. Polimeni, Pandina, and Velez show that Mele would have recovered from her injuries had her family not placed her on palliative care.

The State asserts that defendant's experts' testimony cannot be relevant because they fail to refute "but for" causation.  Indeed, the opinions of defendant's experts are not relevant to the causal analysis under subsection (a) of N.J.S.A. 2C:2-3 -- whether "but for" the crash, Mele would have died. Even under defendant's theory of the case, "but for" causation is already established:  "but for" the collision on June 4, 2019, Mele's family would not have made the decision to place her on palliative care the next day, which resulted in her death.  However, contrary to the State's position, defendant's proffered evidence need not rebut "but for" causation to be admissible at trial on the issue of reckless causation under prong one of N.J.S.A. 2C:2-3(c).  The defendant is not limited to theories that challenge "but for" causation but may also raise defenses to the additional elements of causation that the State must prove beyond a reasonable doubt under N.J.S.A. 2C:2-3(c).

For causation to be established under prong one, a jury must determine whether Mele's death was within the risk of which defendant was aware when he drove under the influence of prescription medication.  If, as defendant argues, Mele did not die as a result of the accident, but instead as a result of

23

palliative care administered to ease the symptoms of her dementia and Alzheimer's disease, then a jury should have the opportunity to consider such testimony in reaching its determination. If the jury credits the testimony of Drs. Polimeni, Pandina, and Velez, it may in fact reasonably infer that defendant's allegedly reckless driving did not give rise to a fatal motor vehicle accident at all, as each expert opines that absent palliative care, Mele would have ultimately survived her injuries from the accident. Accordingly, because there is a legitimate dispute as to the cause of Mele's death and whether it was within the risk of which defendant was aware, defendant must be given the opportunity to refute the State's theory of causation as to the manner and character of Mele's death under prong one of N.J.S.A. 2C:2-3(c).

The MPC, while not binding, also supports allowing defendant to present such expert testimony. The hypotheticals in the MPC comments illustrate that the jury should decide whether a result is so remote or unusual as to fall outside the culpability contemplated by the defendant's conduct. See MPC § 2.03 cmt. 3. The "ultimate criterion," as noted in the MPC commentaries, is whether the "actual result is so remote from the actor's purpose or contemplation that it should have no bearing on the gravity of the offense for which he is convicted." Ibid. A jury may very well decide that the actual result -- Mele's death -- resulted from an intervening cause -- palliative care to

24

ease her Alzheimer's symptoms -- rather than defendant's reckless driving, such that it cannot justify a conviction under N.J.S.A. 2C:11-5. Thus, we hold that the testimony of defendant's experts is relevant to the issue of causation under prong one of N.J.S.A. 2C:2-3(c).[4]

We address one final point regarding the State's theory under prong one. The State contends that "an intervening cause is irrelevant to a prong one" prosecution, presuming that such arguments are relevant only to prong two. The State's argument that intervening causes can never be a defense to prong one, and that defendant's theory is irrelevant because it does not defeat "but for" causation, is unsupported by either the statutory text or the structure of the culpability analysis required under prong one. The State's argument that intervening causes can only apply when they successfully challenge "but for" causation conflates prong one's full culpability assessment with "but for"

_____

[4] The Appellate Division extended the holding of <u>Pelham</u> by finding that it applied equally in a "situation involving a family's decision not to place the victim on life support systems." That was incorrect. In <u>Pelham</u> we held that "if defendant's actions set in motion the victim's need for life support, without which death would naturally result, then the causal link is not broken by an unforeseen, extraordinary act when the victim exercises his or her right to be removed from life support and thereupon expires." 176 N.J. at 467. Here, defendant's experts seek to testify that the motor vehicle accident did not "set in motion the victim's need for life support, without which death would naturally result." <u>Ibid.</u> Instead, the experts seek to testify that Mele did not need life support from the accident, and died because of the large doses of narcotics she received. <u>See</u> <u>Pelham</u>, 176 N.J. at 467.

25

causation, effectively insulating the "within the risk of which the [defendant was] aware" element from any potential defense. A plain reading of N.J.S.A. 2C:2-3(c) does not limit the consideration of intervening causes in such a way.

Accordingly, the defense is permitted to introduce evidence that challenges the causal chain advanced by the State under prong one, including evidence of an intervening cause.

### C.

This Court is also asked to consider whether an N.J.R.E. 104 hearing is necessary to determine whether defendant's proposed experts may testify. We find that it is not.

According to N.J.R.E. 104(a)(1), "[t]he court shall decide any preliminary question about whether . . . evidence is admissible." N.J.R.E. 104(a)(2) states that the reviewing court "may hear and determine [admissibility] outside of the presence or hearing of the jury."

As we noted above, defendant's proposed testimony is relevant to a prong one causal analysis. All three experts opine that the manner of Mele's death was not the accident, but rather the administration of narcotics through palliative care. Thus, such testimony is relevant to whether the manner of Mele's death diverged from the result that defendant risked through his recklessness. As such, a court need not hold an N.J.R.E. 104 hearing to

determine whether the experts' opinions are relevant. Furthermore, any inconsistencies between the reports do not affect their admissibility. It is the jury's responsibility to evaluate the "credibility of all of the evidence" and resolve factual disputes. State v. Cole, 229 N.J. 430, 450 (2017). All three experts' reports, despite their differences, ultimately opine that Mele's cause of death was hospice treatment, not accident-related injuries, and it is up to the jury to decide whether to credit such testimony. In addition, neither the State nor defendant requests an N.J.R.E. 104 hearing at this stage.

D.

Finally, we address some practical considerations. We acknowledged in Buckley that the State may elect which prong of N.J.S.A. 2C:2-3(c) it will rely upon in its prosecution, and we see no reason to diverge from that acknowledgment. See 216 N.J. at 260. We do, however, now require that the State disclose to defendants which prong it will be relying on at the earliest possible stage where the application of N.J.S.A. 2C:2-3(c) is warranted. With the earliest possible disclosure, defendants may be given the fairest opportunity to tailor their own evidence and theories to the State's chosen prong.

At the close of evidence, "the trial court [is] . . . obliged to provide the jury with appropriate instructions depending on which version of causation it

[chooses] to accept." Eldridge, 388 N.J. Super. at 498. Thus, under N.J.S.A. 2C:2-3(c), the court ultimately decides whether to instruct the jury on prong one, prong two, or both, selecting instructions that best fit the applicable portion(s) of the statute. Although "[c]ausation is a factual determination for the jury to consider . . . the jury may consider only that which the law permits it to consider." Buckley, 216 N.J. at 263 (quoting Pelham, 176 N.J. at 466).

## V.

We therefore find that an N.J.R.E. 104 hearing is unnecessary and thus reverse the judgment of the Appellate Division. The matter is remanded to the trial court to proceed in accordance with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and HOFFMAN join in JUSTICE NORIEGA's opinion.